**In re R.B. MOOR.**

**Bankruptcy No. E84–40124.**

United States Bankruptcy Court, N.D. Mississippi.

Feb. 18, 1985.

Allen D. Ray, Jr., Greenwood, Miss., for R.B. Moor.

James W. O'Mara, Butler, Snow, O'Mara, Stevens and Cannada, Jackson, Miss., for Travelers Ins. Co.

Asst. U.S. Atty. Robert P. Crutcher, Oxford, Miss., for Farmers Home Admin.

Porter W. Peteet, Peteet and Robinson, Greenwood, Miss., for First Federal Sav. and Loan Ass'n of Greenwood.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration of a renewed motion to lift the automatic stay filed by the Travelers Insurance Company, hereinafter referred to as Travelers; a motion to lift the automatic stay filed by First Federal Savings and Loan Association of Greenwood, hereinafter referred to as First Federal; responses to said motions filed by the Debtor, R.B. Moor; motion for approval of 1985 crop financing filed by the aforesaid Debtor; objections to said motion filed by Travelers Insurance Company and the Farmers Home Administration, an agency of the United States Department of Agriculture; all parties being represented by their respective attorneys of record; on proof in Open Court; and the Court after having heard and considered same, finds as follows, to-wit:

### I.

This bankruptcy case was filed by the Debtor as a Chapter 11 proceeding on or about June 19, 1984. As evidenced by promissory notes secured by respective deeds of trust, the Debtor is indebted to Travelers Insurance and First Federal in the following amounts:

A. Travelers Insurance—principal and accrued interest effective September 12, 1984, in the sum of $559,989.11. Interest has accrued on this indebtedness since September 12, 1984, through January 23, 1985, in the sum of $17,414.22, and continues to accrue interest at the rate of $130.934 per day. Additionally, Travelers alleges that it has suffered economic losses as a result of being prohibited from enforcing its rights against its collateral from the date of the bankruptcy filing through January 23, 1985, in the sum of $45,769.10, relying on

*In re American Mariner Industries, Inc.,* 734 F.2d 426 (C.A. 9th Cir.–1984).

B. First Federal—principal and accrued interest effective January 22, 1985, in the sum of $27,631.65, plus interest accruing thereafter at the rate of $6.41 per day.

### II.

The Travelers Insurance indebtedness is secured by a deed of trust encumbering approximately 514 acres of agricultural real property. This property was appraised by S.E. Waggoner, an expert real estate appraiser, effective January 19, 1985, utilizing the market data approach in the sum of $775,000.00, and utilizing the cost approach in the sum of $784,000.00. On the other hand, the Debtor, testifying as a lay witness (at the hearing conducted on January 23, 1985), indicated that he valued his property at the sum of $1,699,750.00. At the hearing conducted on February 14, 1985, the Debtor testified that in his opinion his property was worth the sum of $2,925,524.00.

The indebtedness owed to First Federal is secured by a separate deed of trust encumbering the Debtor's personal residence. Although this property is subject to a subordinate lien in favor of the Farmers Home Administration, it is not included within the Travelers Insurance deed of trust. As to the residential property, First Federal holds the primary lien, while as to the 514 acres of agricultural property, Travelers Insurance holds the primary lien. The residential property was appraised by James Quinn, an expert real estate appraiser, effective January 19, 1985, utilizing the cost approach in the sum of $81,500.00, and utilizing the market data approach at between $78,000.00, to $80,000.00.

### III.

There are several other obligations owed by the Debtor which constitute liens against the residential and agricultural real properties. These obligations are identified as follows:

A. Farmers Home Administration—this agency holds a subordinate lien against both the residential and agricultural real properties in the total sum of $285,231.03; in addition, Farmers Home Administration holds a lien encumbering certain farm equipment and machinery owned by the Debtor, valued by Farmers Home Administration in the sum of $23,400.00, but valued substantially higher by the Debtor; the total indebtedness owed to Farmers Home Administration, a part of which is not exclusively secured by the aforementioned parcels of real property, is the sum of $314,984.72, effective January 23, 1985.

B. Ad valorem taxes: 1981—all properties were sold as a result of the nonpayment of 1981 taxes, but the sales were redeemed by Farmers Home Administration on March 26, 1984, by the payment of the sum of $5,200.03. Farmers Home Administration asserts that it is entitled to a priority position as to the amount paid for this redemption, but this issue is not before the Court at this time.

1982—all properties were sold as a result of the nonpayment of 1982 taxes, but the sales have not yet been redeemed. The taxes applicable to the 514 acres of agricultural real property amount to the sum of $3,684.36, while the amount of taxes applicable to the residential real property was not disclosed in the evidence.

1983—all properties were sold as a result of the nonpayment of 1983 taxes, but the sales have not yet been redeemed. The taxes applicable to the 514 acres of agricultural real property amount to the sum of $3,388.93, while the amount of taxes applicable to the residential real property was not disclosed in the evidence.

1984—taxes are due and owing on the 514 acres of agricultural real property in the sum of $3,783.78; taxes are due and owing on the residential real property in an amount not disclosed in the evidence.

Parenthetically, the Court notes that although the Debtor may have an equitable interest in his parcels of real property by virtue of his right to redeem the tax sales, which might be considered protected by the provisions of 11 U.S.C. § 362(a), the tax sales will mature by operation of law in favor of the successful tax sale purchaser within the next few months.

C. Other debts which constitute liens against the real properties:

| | | |
|---|---|---|
| Mississippi State Tax Commission | $ 8,890.00 | (tax lien judgment) |
| Ernest Scruggs | 12,704.85 | (judgment) |
| Tempro Quilters | 9,848.34 | (judgment) |
| Georgia Durango Boots | 5,395.01 | (judgment) |
| Total | $36,838.20 | |

IV.

As to the economic losses to which Travelers Insurance alleges that it is entitled pursuant to the holding of *American Mariner Industries, Inc.*, supra., the Court does not address this issue at this time in view of the fact that Travelers Insurance is not an undersecured creditor as contemplated in the aforementioned case. However, considering all of the various indebtednesses, the Debtor apparently has no equity ownership in the 514 acres of agricultural real property.

V.

During 1984, the Debtor was unable to farm the agricultural property primarily because he was unable to obtain a crop loan. At a previous hearing, the Debtor testified that he had exhaustively attempted to contact practically every lender in the Mississippi Delta to obtain financing for the 1984 crop, as well as, his 1985 crop. At the hearing conducted on January 23, 1985, the Debtor indicated that he had obtained a verbal commitment from the Bank of Mississippi, Grenada, Mississippi, for a 1985 crop production loan in the sum of $148,444.00. The Debtor initially projected a net income from his 1985 farming operations in the sum of $158,044.00 (see Debtor's Exhibit 4, January 23, 1985, hearing), but later revised this figure downward to the sum of $140,680.95, (see Debtor's Exhibit 1, February 14, 1985, hearing). He testified that the aforementioned lender, in consideration of extending the anticipated crop production loan, which was also revised downward

to the sum of $91,916.27, expected to receive a super priority lien on the agricultural property owned by the Debtor, superior to the liens of Travelers Insurance and Farmers Home Administration. The lender also expected to receive a lien on the 1985 crop proceeds, an assignment of any crop insurance proceeds which might be forthcoming, as well as, an assignment of the ASCS deficiency and diversion payments. The Debtor advised that should he not be able to obtain this loan that his farming activities would necessarily terminate.

Even if the Debtor was successful in planting his 1985 crops, he proposes to pay the secured creditors in this case only after the crops are harvested which would normally occur sometime in late 1985. The proposed loan proceeds would be utilized exclusively to fund the farming expenses, as well as, to pay the delinquent taxes. The Debtor concedes that none of the proceeds would be utilized to provide adequate protection to the secured creditors and that there are no funds currently on hand that can be used to even pay the delinquent taxes. Therefore, the conclusion becomes inescapable that there is insufficient cash available to offer the secured creditors any reasonable payment as adequate protection at this time. The Court also notes as a reflection on the Debtor's projections that the testimony was uncontraverted that the Debtor has not experienced a successful crop year since his began borrowing from Farmers Home Administration in 1979. At the most recent hearing, no representative from the Bank of Mississippi, the proposed lending institution, was present to testify concerning the conditions required by the loan commitment nor the terms of the related loan transaction. Considering the evidence presented, the Court finds that there is, in fact, no firm loan commitment and that the terms of this transaction are highly inconclusive.

Considering the status of the loan, the Debtor's projections, which appear to be overly optimistic, stand little likelihood of becoming reality. Due to the fact that the Debtor cannot provide any form of adequate protection, that he owns no equity in the agricultural property, as well as, because the lender as a condition of the proposed loan transaction requires a super priority lien on the agricultural property, the Court finds that the Debtor's motion for approval of crop financing should be overruled. Further, that the automatic stay should be lifted for cause as to the 514 acres of agricultural real property at the expiration of a thirty (30) day period pursuant to the provisions of 11 U.S.C. § 362(d), which provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or—

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

In addition to finding that the automatic stay should be lifted for cause, including the lack of adequate protection, i.e., § 362(d)(1), the Court, as set forth hereinabove, is of the opinion that considering the totality of the debt encumbering the agricultural property, the Debtor owns no equity in this property.[1] Although this farm

---

1.                   Calculation of Debt to Value
            Applicable to 514 Acres Agricultural Property

Residential Property

| | |
|---|---|
| Appraised Value | $ 80,000.00 |
| First Federal Debt | 27,631.65 |
| Residential Value Encumbered by FmHA | $ 52,368.35 |

land might be considered necessary for the Debtor's reorganization in the farming business, such a reorganization does not appear to be a reasonable possibility in this case. Consequently, the Court also feels that the automatic stay should be lifted as to the agricultural real property following the expiration of a thirty (30) day period pursuant to the provisions of 11 U.S.C. § 362(d)(2)(A) and (B).

Within the aforementioned thirty (30) day period from and after February 14, 1985, the Debtor shall be permitted an opportunity to obtain a firm loan commitment that does not require a super priority lien in preference over other secured creditors as to the agricultural real property. In addition, if the Debtor wishes to prevent the lifting of the automatic stay, he shall present to the Court a viable proposal providing adequate protection for the security interests of Travelers Insurance and Farmers Home Administration. Absent the submission of both of the foregoing requirements, the automatic stay shall be lifted effective March 15, 1985, as to the 514 acres of agricultural real property, without further order of this Court.

### VI.

As to the residential real property, the Court is of the opinion that First Federal enjoys a fairly substantial "equity cushion" at this time, i.e., the fair market value of the property as appraised between $78,-000.00, to $80,000.00, exceeds the existing indebtedness in the sum of $27,631.65. Since the interest of First Federal is found to be adequately protected [see *In re Mel-*

Calculation of Debt to Value
Applicable to 514 Acres Agricultural Property

Delinquent Taxes—Agricultural Property

| | |
|---|---|
| 1982 | $ 3,684.36 |
| 1983 | 3,388.93 |
| 1984 | 3,783.78 |
| Total Taxes | $ 10,857.07 |

FmHA Debt

| | |
|---|---|
| Total Debt | $314,984.72 |
| Equipment Value | 23,400.00 |
| | $291,584.72 |
| Residential Value Encumbered by FmHA | 52,368.35 |
| Net FmHA Debt | $239,216.37 |

Debts Encumbering Agricultural Property

| | |
|---|---|
| Travelers Debt (9/12/84) | $559,989.11 |
| Accrued Interest | 17,414.22 |
| Travelers Debt (1/23/85) | $577,403.33 |
| Net FmHA Debt | 239,216.37 |
| | $816,619.70 |
| Judgment Debts | 36,838.20 |
| | $853,457.90 |
| Taxes | 10,857.07 |
| Total Debts | $864,314.97 |

Comparison

| | |
|---|---|
| Total Debts | $864,314.97 |
| Agricultural Property Appraisal | 775,000.00 |
| Value Deficiency (1/23/85) | $ 89,314.97 |

*lor,* 734 F.2d 1396 (C.A. 9th Cir.–1984) ] the Court finds that as to the residential real property that the automatic stay shall not be lifted provided the Debtor performs the following, to-wit:

A. Since the 514 acres of agricultural real property is being released from the protection of the automatic stay, the Court is of the opinion that the reorganization of the Debtor must necessarily take another path, other than farming activities, noting particularly that the Debtor is engaged in the retail sales trade. The Debtor will be permitted to amend his Chapter 11 plan of reorganization within 30 days of the date of this Opinion to rechart his financial course. The Debtor in this amended plan should propose to treat the First Federal claim in compliance with the provisions of 11 U.S.C. § 1129. The Court is particularly aware that the Debtor is only in arrears in the sum of $2,799.69, effective the date of the January 23, 1985, hearing, as to this particular indebtedness.

B. At least 10 days prior to the date that the 1982 tax sale will mature, the Debtor should fully redeem this tax sale as same applies to the residential property. Likewise, within 90 days from the date of this opinion, the Debtor should redeem the tax sale resulting from the non-payment of 1983 taxes applicable to the residential real property. Prior to any tax sale occurring as a result of the non-payment of the 1984 taxes, the Debtor should pay said taxes in order to avoid such a sale.

C. The Debtor shall continue to maintain fire and extended insurance coverage applicable to his residential dwelling, designating First Federal as an additional loss payee. The Debtor shall promptly furnish proof of such insurance to First Federal.

In the event that the Debtor fails to comply with any of the above conditions, on proper application to this Court, the automatic stay shall be lifted as to the residential real property.

An Order will be entered consistent with this Opinion.