In re **CONQUEST OFFSHORE INTERNATIONAL, INC.**

**CITICORP INDUSTRIAL CREDIT, INC., Movant,**

v.

**CONQUEST OFFSHORE INTERNATIONAL, INC., Respondent.**

**Bankruptcy No. 8508596SC.**

**Motion No. 86–M–6.**

United States Bankruptcy Court, S.D. Mississippi.

Aug. 8, 1986.

Jamie G. Houston, III, Watkins & Eager, Jackson, Miss., for movant.

Richard F. Scruggs, Pascagoula, Miss., for respondent.

## MEMORANDUM OPINION

T. GLOVER ROBERTS, Bankruptcy Judge.

This matter came on for consideration by the Court upon the motion filed on behalf of Citicorp Industrial Credit, Inc. on January 7, 1986 requesting (1) an adjudication that certain property is not included in the bankruptcy estate, (2) dismissal, (3) relief from the automatic stay, or (4) adequate protection. A hearing on the motion was held before the Court on March 6, 7, 10, and 11, 1986. Upon the evidence presented and the memoranda submitted by counsel, the court issues the following findings and conclusions in accordance with Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52. Certain underlying facts of this matter have been stipulated and are incorporated herein by reference.[1]

### I.

Citicorp urges that the Debtor's Chapter 11 proceeding was filed in bad faith and that it must be dismissed as a result. As a basis for this argument, Citicorp relies on a line of cases, which refer to the "new debtor syndrome", where petitions were dismissed on lack of good faith under circumstances that bear resemblance to this debtor's case. The case of *In re Yukon Enterprises, Inc.*, 39 B.R. 919 (Bankr.C.D.Cal. 1984) sets out several "badges of bad faith" to be considered in cases involving the "new debtor syndrome" which include the following:

(1) The transfer of distressed and real property into a newly created or dormant entity, usually a partnership or corporation;

(2) The transfer occurring within close proximity to the filing of the bankruptcy case;

(3) No consideration being paid for the transferred property other than stock in the debtor;

(4) The debtor having no assets other than the recently transferred, distressed property;

(5) The debtor having no or minimal unsecured debts;

(6) The debtor having no employees and no on-going business; and

(7) The debtor having no means, other than the transferred property, to service the debt on the property.

*Id.* at 921. Other cases in which similar factors were recognized as present in bad faith filing include: *In re FJD, Inc.*, 24 B.R. 138 (Bankr.D.Nev.1982) (recognized creation of debtor entity in proximity to filing, non-viable nature of a debtor's business, and absence of unsecured creditors as evidence of bad faith); *In re Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir. 1985) (recognized factors relevant in examining good faith including whether debtor had assets, on-going business, and probability of plan); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984) (confirmed dismissal where there was no realistic possibility of reorganization and evidence that debtor merely sought delay); *In re Mildevco*, 40 B.R. 191 (Bankr.S.D.Fla.1984) (petition not in good faith where new debtor sought to reorganize and embark on speculative venture); *In re American Property Corp.*, 44 B.R. 180 (Bankr.M.D.Fla.1984) (bad faith recognized where single asset is held in hopes of its value increasing). *In re Victory Construction Co.*, 9 B.R. 549 (Bankr.C.D.Cal.1981) (petition was filed to prevent foreclosure and create a vehicle for profit through use of secured creditors' collateral).

*Yukon* also recognizes the test in determining the existence of bad faith of "whether any of the substantive or procedural rights of any of the creditors to assets, available prior to the transfer of the property, have been altered or eroded by the transfer and subsequent filing." *Id.* at

---

**1.** See Citicorp brief in support of motion filed March 31, 1986 for facts stipulated at trial which were basically taken from the joint pre-trial order filed on March 10, 1986. The Court hereby adopts Section II B in Citicorp's brief relating to "additional facts" established at trial.

921 (citing *In re Northwest Recreational Activities, Inc.,* 4 B.R. 36 (Bankr.N.D.Ga. 1980), and *Duggan v. Highland-First Ave. Corp.,* 25 B.R. 955 (Bankr.C.D.Cal.1982). The Court in *In re Beach Club,* 22 B.R. 597 (Bankr.N.D.Cal.1982) adopted this modified view of "new debtor" cases of looking to the substance of the action to determine whether creditor's rights have been detrimentally altered by the transfer to the new debtor. Several factors were taken into consideration there in making the determination that the petition was not in bad faith, including that there was a large equity cushion, liability of the general partner of the debtor was unaffected, and the creation of the entity was for a good business purpose, *i.e.,* to prevent aborting of other viable entities of the debtor. Additional reasons that the Court found the creation of the new debtor to be for a good purpose, included:

a. the fact that Innisfree was eligible to file its own Chapter 11 proceeding; *See In re Northwest Rec. Activities, Inc.* [4 B.R. 36 (Bkrtcy.N.D.Ga.1980)] *supra, In re Tolco Properties, Inc.,* 6 B.R. 482, 6 B.C.D. 913, 3 C.B.C.2d 100 (Bkrtcy.E.D. Va.1980);

b. the fact that the plaintiff may be afforded adequate protection;

c. the fact that a feasible and workable plan of reorganization is presumably possible;

d. the fact that the general partner of the debtor is subject to potential liability in this case; and

e. the fact that various other safeguards exist in this court, including the appointment of a trustee.

To find bad faith here would be tantamount to saying that it would be preferable to wreck Innisfree to obtain for plaintiff a similar if not identical disposition that is obtainable here, and would further award plaintiff a substantial windfall of property equity.

*Id.* at 600. Additional cases which have held that the substance of the transaction must be considered in determining the existence of bad faith include *In re I–5 Investors, Inc.,* 25 B.R. 346 (Bankr.D.Or.1982)

(held that such transfers are not universally subject to dismissal as bad faith filings); *In re 2218 Bluebird Ltd. Partnership,* 41 B.R. 540 (Bankr.S.D.Cal.1984) (recognizes that transfer to new entity may be done in good faith, although bad faith was found there).

It was further pointed out in *Yukon* that some Courts, as the Seventh Circuit, consider the facts and circumstances presented and whether it appeared obvious that the debtor was only acting to forestall the creditor or if the debtor was actually attempting reorganization. The Fifth Circuit, in *Little Creek Development Co. v. Commonwealth Mortgage Corp.,* 779 F.2d 1068 (5th Cir.1986), in addition to recognizing those factors typical in a bad faith scenario, stated that, "Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial realities." *Id.* at 1072. The Court went on to say that, "The 'new debtor syndrome', in which a one asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases." *Id.* at 1073.

In the instant case, the following facts relevant to the above analysis are undisputed: Conquest Offshore International, Inc. was chartered by the Secretary of State of Mississippi on June 14, 1984, although not organized until May 23, 1985. The Chapter 11 petition was filed on December 5, 1985. This chronology shows that the debtor entity was formed eighteen months prior to the bankruptcy and organized six months before the filing. This timing and these circumstances surrounding its creation do not, the Court finds, in and of themselves, specifically fall within the "new debtor syndrome" line of cases, which would then trigger an affirmative finding of bad faith in the filing. The Court must take into consideration additional factors. It must closely scrutinize the transactions that occurred, *See In re I–5 Investors, Inc., supra,* and must make an on-the-spot-evaluation of the debtor's fi-

nancial condition, motives, and local financial realities. *Little Creek, supra.*

The evidence is undisputed that the initial purpose for the formation of Conquest Offshore was to hold title to the vessel, Bold Conquest, in order to retain tax benefits to which an original purchaser would be entitled. The purpose for incorporation was not to isolate an asset in order to file a petition in bankruptcy. In fact, the evidence shows that Citicorp, the secured lender on the vessel, had been consulted extensively concerning the transfer of the Bold Conquest to Conquest Offshore and ultimately gave its consent on the transaction.

With the financial decline in the oil and gas industry in the Gulf of Mexico area, and the ensuing distress to Conquest Offshore and its inability to meet financial obligations, the corporation had a valid reason for seeking relief under the Bankruptcy Code.

The fact of the transfer, however, of additional five vessels to Conquest Offshore on December 3, 1985, two days prior to the petition date must be also considered here. In and of itself, these transfers, the Court finds, do not constitute a finding of a bad faith filing of an already existing, financially distressed entity, that held title to its major asset from its date of incorporation. Whether the transfer of the additional five vessels constituted a fraudulent transaction, the Court holds, is a separate question in this case from that of determining whether the filing of the corporate entity, itself, was made in bad faith. Furthermore, although the latter transfers were allegedly made for purposes concerning a reorganization, they cannot be said to have been made to gain a right to file which otherwise was not available, inasmuch as the transferor of the five vessels may have been eligible for relief under the Code as well. Therefore, substantive rights of this secured creditor, here, are no more detrimentally affected than would

have been the case if no transfer had occurred where bankruptcy was, nevertheless, a viable option and the avenue of § 362 stay relief was available.

Although several factors considered by Courts in determining the issue of bad faith in cases involving "new debtors", such as minimal unsecured debt, no real on-going business, and questionable means with which to service the debt, may appear to some degree in this case, the Court finds that, although they may be considered on issues of adequate protection or confirmation, they do not "rise to the level of egregiousness necessary to conclude that the reorganization process is being perverted in this case". *Little Creek Development Co. v. Common Wealth Mortgage Corp.*, 779 F.2d 1068, 1073 (5th Cir.1986). The motion to dismiss on the "bad faith" filing question is therefore denied.

## II.

Citicorp also requests relief from the automatic stay or in the alternative, adequate protection. Relief from the stay "for cause" includes the lack of adequate protection of an interest in property under subsection (d)(1). "Adequate protection" may be provided in three nonexclusive alternative forms pursuant to Section 361 of the Code: (1) cash payment or periodic cash payments, (2) additional or replacement lien, or (3) other relief, with the exception of an administrative priority, as will result in the indubitable equivalent of the creditor's interest.

Conquest Offshore has not provided adequate protection to Citicorp in the form of cash payment, and has not provided additional liens as protection.[2] No other evidence was presented by the debtor to show that the indubitable equivalent of Citicorp's interest is being adequately protected by other means, other than expert testimony from a debtor's witness which offered the appraised value of the vessels to be in excess of the debt owed to the creditor

---

**2.** Although First Preferred Ship Mortgages were granted on 5 vessels other than the Bold Conquest prior to the bankruptcy, no additional liens have been provided since Conquest became a debtor-in-possession. Furthermore, lack of adequate protection is raised as an issue by the creditor even upon taking these mortgages into consideration.

here. Citicorp offered substantial expert appraisal testimony to contradict that of the debtor. The Court concludes that, on the basis of the weight and credibility of the evidence, as shown below, the expert appraisal testimony of Citicorp witness proved that the value of the secured asset, on today's market was substantially less than the debt owed.

▮▮▮ Where it is shown that a creditor is well secured, the "equity cushion" may constitute adequate protection in satisfaction of statutory requirements, and this cushion is considered the classic form of protection for a secured debt. *In re San Clemente Estates*, 5 B.R. 605 (Bankr.S.D. Cal.1980); *In re Mellor*, 734 F.2d 1396 (9th Cir.1984); *In re Moor*, 51 B.R. 640 (Bankr. N.D.Miss.1985). The ratio of the debt owed to the value assigned to the collateral must be reviewed to determine whether adequate protection exists.

"Equity cushion" has been defined as the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect. *In re Roane*, 8 B.R. 997, 1000 (B.Ct.E.D.Pa.1981), *aff'd*, 14 B.R. 542 (E.D.Pa.1981). "Equity," as opposed to "equity cushion," is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors. *La Jolla Mortgage Fund [v. Rancho El Cajon Assoc.]*, 18 B.R. [283] at 287 [S.D.Cal.1982].

*In re Mellor*, at 1400 n. 2. This issue is the primary focus of this lawsuit, in order to reach the above conclusions. An analysis of the testimony presented at the valuation stage of the hearing is therefore necessary to determine whether value in the property exists above the amount owed to sufficiently provide adequate protection to the creditor, here.

Norman J. Dufour, Jr. testified on behalf of the debtor and estimated the fair market value of the Bold Conquest to be $4,190,-000.00.[3] Dufour did not use a comparable sales approach in his estimate because, in his opinion, there were none. He did not consider forced sales of other vessels to be comparable, and, there being a lack of sales activity in the market for comparative purposes due to the depressed state of offshore drilling activity. In this context, Dufour testified that the vessel could probably be sold for approximately $1.0 million within 30 days, $1.5 million within 180 days and $2.0 million within a year.

By stipulation, the condition and valuation survey report of Clarence Hamilton was submitted on the debtor's behalf. Hamilton estimated the fair market value of the Bold Conquest to be $3.2 million "as built and equipped", in an "arms-length" normal market situation.

Citicorp expert marine surveyor, Sheldon Cass, used comparable sales in estimating the value of the Bold Conquest, to be $1.5 million as an orderly sale fair market value and $1.0 million as a 90 day liquidation value. Mr. Cass, however, testified that none of the sales he used were "truly comparable", due to the market situation. All of these sales were forced or liquidation sales. He found no "arms-length" comparable sales transactions in this market at this time.

Also on behalf of Citicorp, Ryan Ulich testified as an expert marine surveyor as to the value of the Bold Conquest. He placed a value, defined as what one would pay with "new unfinanced money", of $1.5 million on the vessel. Ulich also admitted none of the sales used in his approach were truly comparable ones, since no normal "arms-length" transactions could be located due to the depressed market conditions. The only sales he could cite were forced or liquidations.

In defining the appropriate method of valuation to be utilized for adequate protec-

---

**3.** Mr. Dufour's original appraisal of $4.2 million was used by Citicorp in making the original loan to the debtor and the vessel was still carried on the creditor's financial statements at the time of trial at a value of $4.0 million. Citicorp hired independent appraisers upon the debtor's filing of a petition in bankruptcy.

tion purposes the Bankruptcy Court must operate on a case by case basis. Legislative History provides:

"Neither is it expected that the courts will construe the term value to mean, in every case, forced sale liquidation value or full going concern value. There is wide latitude between those two extremes although forced sale liquidation value will be a minimum.

"In any particular case, especially a reorganization case, the determination of which entity should be entitled to the difference between the going concern value and the liquidation value must be based on equitable considerations arising from the facts of the case. Finally, the determination of value is binding only for the purposes of the specific hearing and is not to have a res judicata effect." S.Rep. No. 989, 95th Cong., 2d Sess. (1978). *See Prudential Ins. Co. v. Monnier (In re Monnier Bros.)* 755 F.2d 1336, 1341, 12 C.B.C.2d 323 (8th Cir. 1985).

2 *Collier on Bankruptcy* ¶ 361,02 n. 6 (15th ed. 1986).

■ Under the scenario presented in this case, due to the severely depressed economic conditions in the oil and gas and related marine businesses, the fair market value the Court finds that would apply in a normal market, specifically the $4,190,-000.00 value given by Dufour, is not the proper value. From the facts presented here and from the present state of the economy, the Court finds and concludes that there is no normal market for the Bold Conquest. This economy, in its depressed state, offers no viable market for an arm's length transaction with the Bold Conquest. This is exemplified by the fact that all the comparable sales taken into consideration by the appraisers who utilized a comparable sales method were liquidations. They were the only transactions available to use for comparison. These values must be taken as the best offer where there is virtually no market for the collateral. As stated in

*In re America Kitchen Foods, Inc.,* 9 C.B.C. 537 (D.Me.1976), "the most commercially reasonable disposition practicable in the circumstances should be the standard universally applicable in all cases and at every phase of each case." *Id.* at 553.

Here, the debtor by its own admission has sought without success, to sell the Bold Conquest, since the time it was constructed in 1982. The most commercially reasonable disposition practicable must be a value comparable to that in a liquidation. Based on this standard, the Court finds the value of the Bold Conquest, for purposes of determining adequate protection under § 362(d)(1), to be $1.5 million.

■ The highest value estimated at the hearing in regard to the five smaller vessels was $560,000.00 and the lowest was $450,000.00. Even utilizing the high value, the resulting equity cushion when added to the $1.5 million figure totals only $2,060,-000.00, which is a value far below the outstanding debt owed to Citicorp. The undisputed debt to Citicorp as of the date of filing was $3,543,456.39.

Having made no other provisions for adequate protection,[4] and having no "cushion" with which to provide even temporary protection, the Court finds that the debtor has failed to meet the burden of § 362(g), and therefore, Citicorp is entitled to the requested relief from the automatic stay under § 362(d)(1). Having determined this, the Court finds it unnecessary to conclude whether Citicorp would be entitled to relief from the stay under § 362(d)(2), or whether certain property is included in the bankruptcy estate. It is

SO ORDERED.

---

4. The Court recognizes the interest payments in excess of $1.0 million paid to Citicorp over the life of the loan; however, payments have ceased and the creditor remains inadequately protected for present purposes.