In the Matter of Robert Edwin SUTTON, Debtor.

Robert Edwin SUTTON, Appellant,

v.

BANK ONE, TEXAS, NATIONAL ASSOCIATION, Appellee.

No. 89–8071

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 3, 1990.

Rehearing Denied July 31, 1990.

R. Mike Borland, Borland & Borland, Midland, Tex., for appellant.

Randall L. Rouse, Shafer, Davis, McCollum, Odessa, Tex., for appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

The district court affirmed the order of the bankruptcy court lifting the automatic stay statutorily impressed by 11 U.S.C. § 362. Concluding that the essential factual findings of the bankruptcy court were not clearly erroneous, we affirm.

## Background

Robert Sutton borrowed money from MBank Odessa, securing the repayment with two tracts of land he owned in Midland, Texas. One tract, located in downtown Midland, was vacant; the other tract contained an eight-unit apartment complex. Sutton defaulted and MBank posted the properties for foreclosure. On the eve of foreclosure Sutton invoked Chapter 11 of the Bankruptcy Code. The two tracts comprised the entirety of his bankruptcy estate. Desirous of foreclosing on its collateral MBank moved for relief from the automatic stay of proceedings imposed by 11 U.S.C. § 362.

The bankruptcy court conducted an evidentiary hearing and concluded that a lifting of the stay was warranted: (1) under 11 U.S.C. § 362(d)(2), because Sutton retained no equity in the properties and an effective reorganization was unlikely; and

(2) under section 362(d)(1), because the case was, in essence, a two-party dispute. Sutton appealed to the district court. During the pendency of this appeal MBank cratered and Bank One became its successor-in-interest. The district court affirmed; Sutton timely appealed.

## Analysis

■■ Findings of fact made by a bankruptcy court may not be set aside unless clearly erroneous. *In re Missionary Baptist Foundation, Inc.,* 712 F.2d 206 (5th Cir.1983). Thus we will affirm the bankruptcy court's findings unless "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Conclusions of law, however, are subject to *de novo* review. *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249 (5th Cir.1986).

In order to lift a stay under section 362(d)(2) the bankruptcy court must find that the debtor has no equity in the property and that the property in question is "not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2)(A) and (B). Sutton contends that the evidence presented was insufficient to support the bankruptcy court's findings on both prongs.

1. Sutton's equity in the properties.

■ "Equity" as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it. *Stewart v. Gurley,* 745 F.2d 1194 (9th Cir.1984); *In re Cardell,* 88 B.R. 627 (Bankr. D.N.J.1988). The court's determination of property values is thus central to the decision whether the stay in bankruptcy may be lifted under section 362(d)(2). The majority of the testimony before the bankruptcy court addressed this issue. Sutton contends that the evidence was insufficient to support the court's finding that the combined value of his two properties was only $400,000. He further

contends that the court's estimate was based upon "inapplicable standards of value."

■ Sutton testified that he had been trying unsuccessfully to sell his vacant downtown lot for three years. He further testified that all but one of the apartments had been vacant for six months and that vandals had done approximately $50,000 in damages.

Bank One tendered the testimony of Joel Ball, an MBank officer, to establish the market value of the two tracts. While the court refused to admit into evidence an appraiser's report submitted to Bank One,[1] it permitted Ball to testify about the value of the properties based on his own business experience and expertise. Ball estimated the value of the vacant lot, if sold within 60 to 90 days, as between $200,000 and $250,-000. He estimated the value of the apartment complex, in light of its occupancy rate and vandalized state, to be between $50,000 and $100,000.

Sutton countered with the appraisal testimony of Thomas King, who testified that in his opinion the Midland real estate market had bottomed out and was beginning to improve. Based upon comparable sales, King estimated the value of the downtown lot at $8.00 per square foot, for a total of $448,000. The sales on which King based his estimate dated back to 1984. On cross-examination King conceded that none of the seven comparable sales that had occurred since 1987 were supportive of his estimate. Of those seven sales, five were for less than $5.00 per square foot, and "some [were] down as low as a dollar a square foot." King defined fair market value as that sum a willing buyer and willing seller would agree to, given a reasonable period of time for the transaction. He agreed that three years was a reasonable period of time in which to realize the fair market value of property. King also testified that if the apartment complex were repaired, all units leased, and if the city's HUD program ensured full occupan-

---

1. The court refused to admit the report or to permit Ball to testify to its contents as evidence of the value of the properties because the appraiser who had prepared the report was not present at the hearing.

cy, as Sutton hoped it might, the value of the complex would be $180,000. Sold "as is," King estimated its value at $39,300.

■ Based on all the evidence, the bankruptcy judge determined that the downtown lot had a value of $360,000 and that the apartment complex was worth $40,000. In considering the evaluation of property by bankruptcy courts Congress did not dictate a particular appraisal method. Rather, valuation is determined case-by-case, taking into account the nature of the debtor's business, market conditions, the debtor's prospects for rehabilitation, and the type of collateral. *See* 2 Collier on Bankruptcy ¶ 361.02 (15th ed. 1990); H.R.Rep. No. 595, 95th Cong., 2d Sess. 339, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6295; *In re Conquest Offshore Int'l, Inc.,* 73 B.R. 171 (Bankr.S.D.Miss.1986).

Despite his optimism, the empirical evidence used by Sutton's expert injected a note of sober reality about the state of the real estate market in the subject area. *See In re Conquest Offshore Int'l, Inc.* Evaluating the downtown lot at $5.00 per square foot results in a value of $280,000, considerably less than the $360,000 accepted by the bankruptcy court. Viewing all the evidence, we conclude that the valuation finding by the bankruptcy court is adequately supported by the evidence and is neither factually nor legally erroneous.

Accepting the bankruptcy court's valuations, the conclusion that Sutton retained no equity in his properties is manifest. The bankruptcy court found the value of the subject properties to be a total of $400,000. When Sutton sought bankruptcy relief his debt to MBank was $420,720.21 and was increasing daily.

2. Necessity of the property to an effective reorganization.

■ Once Bank One established that Sutton retained no equity in his properties it became incumbent upon Sutton to demonstrate that the properties were necessary to an effective reorganization. In order to satisfy this burden a debtor must make not merely a showing that if there is conceivably to be an effective reorganiza-

tion, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." [*In re Timbers of Inwood Forest Associates, Ltd.*] 808 F.2d [363] at 370–71 [5th Cir.1987] and nn. 12–13, and cases cited therein.... And while the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan, ... even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief.

*United Sav. Assoc. v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988) (emphasis in original).

■ The bankruptcy court found that Sutton had failed to meet this burden. Despite testimony that he wanted to repay his debt to Bank One, and that he needed more time to do so, the court found that Sutton had offered no testimony about the form his plan would take, or when it could be proposed and brought to fruition. Sutton merely testified that he intended to reorganize by liquidating his assets, which consisted of the two tracts in question. That stated intention, the court concluded, however sincere, did not establish a reasonable probability of an effective reorganization in a reasonable period of time.

Sutton contends that the court erred in reaching this conclusion, emphasizing that he planned to liquidate his two properties to repay his debt, and that he had contacted Midland's HUD program regarding renovation and occupancy of his apartment complex. As further evidence that he had met his burden, Sutton advances his own testimony relative to his expertise in real estate, and his prediction that he could liquidate his debt within 180 days. Finally, he invites our attention to Joel Ball's testimony on cross-examination wherein Ball opined that, "Based on my experience with Mr. Sutton, I think there's a reasonable

chance that he could do something on his debt."

Sutton has no net income and is in arrears on the tax payments on the two properties. He would reorganize by liquidating his two properties, the only assets he owns; but one of those properties has been on the market for three years and the other has been vandalized extensively and has only one tenant. We cannot but admire Sutton's optimism, but we cannot conclude that the bankruptcy court was clearly erroneous in finding that an effective reorganization was not feasible within a reasonable amount of time.

The decision of the district court affirming the bankruptcy court's ruling is AFFIRMED.[2]

**2.** Having affirmed the ruling of the district court under section 362(d)(2), we need not address its affirmance of the bankruptcy court's alternative ruling that relief from the stay was warranted for cause under section 362(d)(1).