**In the Matter of FOXCROFT SQUARE COMPANY and Foxcroft Management Corporation, Debtors.**

Civ. A. No. 94–191.

United States District Court,
E.D. Pennsylvania.

July 17, 1995.

Kenneth E. Aaron, Buchanan Ingersoll Professional Corp., Philadelphia, PA, for debtors Foxcroft Square Co., Foxcroft Management Corp. (Jointly Administered).

Vincent J. Marriott, III, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for appellant Federal Nat. Mortg. Assn.

Alan R. Gordon, Philadelphia, PA, for interested party Official Committee for Unsecured Creditors.

Frederick Baker, Trustee, Philadelphia, PA, pro se.

## MEMORANDUM

GAWTHROP, District Judge.

Before the court is the Federal National Mortgage Association's (FNMA) appeal of the Bankruptcy Court's decision denying FNMA's Motion for Relief from the Automatic Stay. This court has jurisdiction pursuant to 28 U.S.C. § 158(a). Because the issues involve mixed questions of fact and law, a mixed standard of review is called for, under which this court:

> must accept the trial court's findings of historical or narrative facts unless they are clearly erroneous, but ... must exercise a plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.

*Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981) (citations and footnote omitted). Upon the following reasoning, I shall affirm the Bankruptcy Court's order.

### I. *Background*

FNMA is the sole secured creditor of a ground leasehold estate (the Property) and of the improvements on such property, the Foxcroft Square Apartments, a residential apartment building. Appellee/debtor Foxcroft Management Corporation (FMC) owns the Property, as well as the improvements on it, and subleases them to appellee/debtor Foxcroft Square Corporation (FSC).

On May 17, 1989 the Property was leased to Irwin Fox, William Fox, and Dorothy Fox Kotin until July 20, 2013. The terms of the Apartment Lease specifically allow the lease to be assigned to a corporation in which the lessees own the controlling stock.

After Dorothy Fox Kotin died, William Fox, as Executor of her Estate, assigned all of her rights and interests in the Apartment Lease and Foxcroft Square Apartments to William and Irwin Fox, on or about August 27, 1990. Shortly thereafter, William Fox died and Elainne Fox was appointed the Executrix of his estate (the Estate).

On September 3, 1992, Irwin and Elainne Fox executed an agreement assigning the rights and interests of Irwin Fox and the Estate under the Apartment Lease to FMC (the Assignment). On the same date, FMC subleased all of its rights and obligations under the Apartment Lease and in the Foxcroft Square Apartments to FSC. The Assignment and the sublease were both publicly recorded in the Montgomery County Commissioners Registry on September 21, 1992.

Irwin Fox and the Estate each owns 50% of the stock of FMC, and they are the general partners of FSC. At the time of the Assignment, FMC was an existing entity with on-going business affairs and an existing business relationship with FSC.

Before the Assignment, the Foxes obtained a non-recourse construction loan (the Loan) from Maryland National Mortgage Corporation (Maryland National) in the amount of $8,465,000. The Loan was evidenced by a Multifamily Note (the Note) and was secured by a Multifamily Mortgage, Assignment of Rents and Security Agreement (the Mortgage) and an Assignment of Rents and Leases (the Rent Assignment), all dated February 7, 1991. On that same date, Maryland National endorsed the Note and assigned the Mortgage and Rent Assignment to FNMA.

All installment payments due under the Note were made through February, 1993, but in March, 1993, the required payment was not made. On April 30, 1993, FNMA filed a Complaint for Confession of Judgment for Monies against the Foxes in the Court of Common Pleas of Montgomery County, accelerating all amounts due and owing under the Note. Confession of Judgment was entered against the Foxes on April 30, 1993 in the amount of $8,747,902.31 (the Judgment). By operation of law, the Note was merged into the Judgment on April 30, 1993, and installment payments were no longer due. As a result of the recording of the Mortgage, FNMA has a lien on the Property. The

value of the property exceeds the amount of FNMA's lien.

FMC and FSC (collectively, the Debtors) filed petitions for relief under Chapter 11 of the United States Bankruptcy Code on March 22, 1993, and the bankruptcy court imposed an automatic stay pursuant to 11 U.S.C. § 362. FNMA filed its Motion for Relief from the Automatic Stay on June 29, 1993. The bankruptcy court held a hearing on December 8, 1993, and at the close of FNMA's presentation of evidence, the court granted judgment against FNMA and declined to lift the stay. This appeal ensued.

## II. *Discussion*

The filing of bankruptcy triggers the provisions of automatic stay pursuant to 11 U.S.C. § 362(a). To obtain relief from the stay, a party must meet one of the prongs of 11 U.S.C. § 362(d). Section 362(d) reads:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

### A. *FNMA Is Not Entitled To Relief From The Automatic Stay Under § 362(d)(1)*

Section 362(d)(1) allows a party to obtain relief from the stay for "cause, including the lack of adequate protection." 11 U.S.C. § 362(d)(1). FNMA makes three arguments as to why "cause" exists under § 362(d)(1) to lift the automatic stay. I address each of them in turn.

### 1. *Assignment Was Fraudulent Transfer Under § 357*

■ FNMA first contends that there is cause to lift the stay because the Assignment of the Property from the Foxes to the Debtors was a fraudulent conveyance under Pennsylvania's Uniform Fraudulent Conveyance Act, Act of May 21, 1921, P.L. 1045, 39 P.S. § 357. A transferee of a fraudulent conveyance holds only legal title to the conveyed property, and it holds that title subject to a constructive trust for the benefit of the transferor's creditors. *Voest–Alpine Trading U.S.A. v. Vantage Steel, Corp.*, 919 F.2d 206, 217 (3d Cir.1990). FNMA thus argues that because the Debtors hold title to the Property subject to a constructive trust, with an accompanying duty to reconvey, there is cause to lift the automatic stay.

Debtors respond that because neither FNMA nor any other creditor avoided, or even sought to avoid, the Assignment as a fraudulent conveyance, the Assignment must be treated as if it is valid. Although the bankruptcy court advised FNMA that the court believed that FNMA's Motion was not the appropriate context in which to litigate a claim for fraudulent conveyance, the court permitted FNMA to present evidence going to that issue. H.T. at 21–23. At the conclusion of that evidence, the court found that it did not "believe that the elements of an actual or constructive fraudulent conveyance of the interests in realty to the Debtors were proven." Because I agree that FNMA has not established that the Assignment was a fraudulent conveyance, I need not address the fact that the Assignment was never avoided.

■ Section 357 states:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

39 Pa.C.S.A. § 357. The requisite intent under § 357 must be shown by clear and convincing evidence. *United States v. Gleneagles Investment Co.*, 565 F.Supp. 556, 580 (M.D.Pa.1983), *aff'd in part and remanded*

sub nom., *United States v. Tabor Realty Corp.*, 803 F.2d 1288 (3d Cir.1986), *cert. denied sub nom., McClellan Realty Co. v. United States,* 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987). The determination of whether there is § 357 intent to defraud is a finding of fact which should not be set aside on appellate review unless that finding was clearly erroneous. *Tabor Court Realty,* 803 F.2d at 1304.

▬ In the absence of an admission of fraud, courts have taken two approaches to determine the existence of actual intent. Under the first approach, intent to defraud may be inferred when two factors are present: 1) where consideration is lacking for a transfer; and 2) where the transferor and transferee have knowledge of the claims of creditors and know that they cannot be paid. *Id.* at 1304. Under this analysis, FNMA has not established that the Property was fraudulently transferred. Although FNMA demonstrated that the Foxes and the Debtors knew of FNMA's claim against the Property, it failed to show that those parties knew that FNMA's claim could not be paid. The Assignment was made six months before the Debtors filed for bankruptcy, at a time when the Foxes were not in default under the loan documents. Because the Foxes continued to make their loan payments to FNMA during the five months following the Assignment and there was no default until March 1, 1993, three weeks before the bankruptcy, there is no evidence that the Foxes knew that they were going to default on the loan.

▬ Under the second approach, intent to defraud may be proved by showing the presence of "badges of fraud," *Moody v. Security Pacific Business Credit, Inc.,* 127 B.R. 958, 990 (W.D.Pa.1991), *aff'd,* 971 F.2d 1056 (3d Cir.1992), which include: (1) inadequate consideration; (2) a close relationship between the transferor and transferee; (3) pendency of litigation; (4) the transferor's reservation of a benefit in the transferred property; (5) the transferor's retention of possession; and (6) intent to conceal the transfer. *See id.* at 991; *United States v. Klayman,* 736 F.Supp. 647, 649–50 (E.D.Pa. 1990). Some of these badges exist in the case at bar. For example, There was a close

relationship between the corporate Debtors and the Foxes, and it is unclear whether there was adequate consideration for the Assignment. In addition, the Foxes still benefit from, and their corporations retain possession of, the Property. While these badges of fraud may be present, however, others are not. For instance, as to the "pendency of litigation", there was no evidence that litigation was pending at the time of the Assignment. The Foxes assigned the Property to the Debtors a full six months before the bankruptcy filing, at a time when the Foxes were not in default under the loan documents. This was not a situation in which a transfer of property was made on the eve of a foreclosure to an entity which then files for bankruptcy the following day. *See In re Nelson,* 66 B.R. 231, 232–33 (Bankr.D.N.J. 1986) (transfer occurred thirteen days before bankruptcy filing), *aff'd,* 838 F.2d 1207 (3d Cir.1988); *In re Rye,* 54 B.R. 180, 181 (Bankr.D.S.C.1985) (transfer of property to debtor occurred within twelve days of bankruptcy filing); *In re Yukon Enterprises, Inc.,* 39 B.R. 919, 920 (Bankr.C.D.Cal.1984) (transfer of property to debtor occurred within twelve days of filing). *Compare In re Conquest Offshore International, Inc.,* 73 B.R. 171, 174 (Bankr.S.D.Miss.1986) (debtor formed eighteen months and organized six months before bankruptcy does not trigger "new debtor syndrome").

FNMA also did not establish that the Foxes or the Debtors intended to conceal the Assignment. Both the Assignment to FMC and the sublease to FSC were publicly recorded within twenty days of execution in the Montgomery County Commissioners Registry. FNMA thus had constructive notice of the Assignment and sublease. The Debtors' public recording of the Assignment suggests that they intended to make the transfer known, rather than to conceal it.

Thus, looking at the evidence in its totality, the analysis of whether the Assignment was a fraudulent transfer is difficult. Some of the badges of fraud are present, indicating that the Assignment may have been fraudulent, while others are not. I, to be frank, cannot say that I would necessarily have found as did the bankruptcy judge. But

when sitting in an appellate capacity, I must resist the temptation to indulge in nisi prius plenary decisionmaking and be constantly mindful of my rather limited scope of review. Because it is a close call, and the facts are not clear, I cannot say that the bankruptcy court's finding was clearly erroneous.

2. *Whether Debtors Are Authorized To Restructure FNMA's Lien On The Property*

■ FNMA also argues that cause exists to terminate the automatic stay as to FNMA because FNMA's lien on the Property cannot be restructured in the Debtors' bankruptcy cases.

In *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), the Supreme Court held that a mortgage lien for which a debtor has no personal liability is a "claim" within the meaning of the Bankruptcy Code, subject to inclusion in a Chapter 13 plan of reorganization. In so ruling, the Court relied upon provisions of the Bankruptcy Code that are applicable to the entire Bankruptcy Code. *See Stephenson & Lindsey v. Federal Deposit Insurance Corporation (In re Lindsey)*, 995 F.2d 626 (5th Cir. 1993) (applying *Johnson* to Chapter 12 bankruptcy over objection of creditor on rationale that the "Code defines 'claim' and 'debt' for purposes of the entire title, not individual sections"), *cert. denied*, —— U.S. ——, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994). Accordingly, although the case at bar concerns a Chapter 11 bankruptcy, the rationale which the Supreme Court used in deciding *Johnson* is equally applicable here and FNMA's lien on the Property may be restructured in the Debtors' bankruptcy cases.

The Supreme Court began its analysis in *Johnson* by noting that, under the Code, the term "claim" means:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5) (1993). Reasoning that a mortgage holder's right to proceeds from the sale of a debtor's property constitutes a "right to payment" and that the right to foreclose upon a mortgage constitutes a "right to an equitable remedy," the Supreme Court concluded that a mortgage lien fits within the definition of "claim" under § 101(5).

The Court wrote that an analysis of §§ 502(b) and 102(2) of the Bankruptcy Code supports this conclusion. Section 502(b)(1) provides that a bankruptcy court shall "determine the amount of [a disputed] claim ... and shall allow such claim in such amount, except to the extent that ... such claim is unenforceable against the debtor and the *property of the debtor.*" 11 U.S.C. § 502(b)(1) (emphasis added). The Court wrote that this means that a "court must allow the claim if it is enforceable against either the debtor or his property." *Johnson*, 501 U.S. at 85, 111 S.Ct. at 2155.

Section 102(2) states: "In this title ... 'claim against the debtor' includes claim against property of the debtor." 11 U.S.C. § 102(2) (1993). The Supreme Court wrote that, "A fair reading of § 102(2) is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the Code." *Johnson*, 501 U.S. at 85, 111 S.Ct. at 2155.

FNMA argues that *Johnson* is distinguishable in two respects. First, while the Chapter 13 debtor in *Johnson* was not personally liable on the mortgage obligation, he was the original obligor. That is, a debtor-creditor relationship existed between him and the bank—unlike this case, where there was no debtor-creditor relationship between FNMA and the Debtors. That distinction is not enough. The Court observed that in fashioning § 102(2) Congress used language broad enough to extend to all interests having the relevant attributes of nonrecourse obligations "regardless of how those interests come into existence." *Johnson*, 501 U.S. at 86–87, 111

S.Ct. at 2155–56. Thus, that the Debtors were not the original obligors under the Note does not change the result.

FNMA also argues that to permit a restructuring of the lien on the Property would be inconsistent with the Bankruptcy Code's policy that obligations can only be restructured in a bankruptcy of the obligor. *See* 11 U.S.C. § 524(e) (providing that the "discharge of a debt of a debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt"). FNMA argues that being inconsistent with the policies behind the Bankruptcy Code is unlike *Johnson,* which is in accordance with the purpose of the Bankruptcy Code to assure that debtors in bankruptcy are afforded the maximum ability to restructure their obligations.

The Debtors may not have been the original obligors with respect to the loan at bar, however, as noted above, FNMA has a "claim" on property owned by the Debtors under the Supreme Court's broad interpretation of the general provisions of the Bankruptcy Code. I am bound by the wording of the Code and the Supreme Court's interpretation of that wording. That, rather than some perception of the Code's spirit, must prevail. Hence, FNMA's policy-consideration arguments cannot carry the day.

3. *Whether Debtors Filed Their Bankruptcy Petitions In Bad Faith*

█ FNMA also argues that cause exists to terminate the automatic stay because the Debtors filed their bankruptcy petitions in bad faith. I may overturn the decision of the bankruptcy judge that the Debtors did not act in bad faith only if I find that the bankruptcy court abused its discretion when it made that decision. *See In re Shariyf,* 68 B.R. 604, 606 (E.D.Pa.1986). "Discretion is abused when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court." *Id.* at 606–07 (quoting *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 105 (3d Cir.1976)).

Courts use several approaches to determine whether bankruptcy petitions are filed in bad faith. One approach is to contemplate a laundry list of factors tending to suggest bad faith. These include:

1) The debtor has few or no unsecured creditors;

2) There has been a previous bankruptcy petition by the debtor or a related entity;

3) The pre-petition conduct of the debtor has been improper;

4) The petition effectively allows the debtor to evade court orders;

5) There are few debts to non-moving creditors;

6) The petition was filed on the eve of foreclosure;

7) The foreclosed property is the sole or major asset of the debtor;

8) The debtor has no ongoing business or employees;

9) There is no possibility of reorganization;

10) The debtor's income is insufficient to operate;

11) There was no pressure from non-moving creditor;

12) Reorganization essentially involves the resolution of a two-party dispute;

13) A corporate debtor was formed and received title to its major assets immediately before the petition, and;

14) The debtor filed solely to create the automatic stay.

*In the Matter of Grieshop,* 63 B.R. 657, 663 (N.D.Ind.1986).

█ Application of these factors at bar leads to the conclusion that the bankruptcy court did not abuse its discretion when it found that the Debtors did not file for bankruptcy in bad faith. The Debtors, FMC and FSC, have been operating as ongoing businesses since the early '80s and '60s, respectively. Both corporations own, manage, and operate commercial real estate. The bankruptcy petitions were filed in 1993 and were the first bankruptcy petitions filed by either corporation. The Debtors were not organized to be transferees of the Property and then file for bankruptcy protection. In addition, the Property was transferred to FMC in

early September, 1992, when there was no foreclosure pending and six months before the Debtors filed for bankruptcy. Finally, FNMA is not the Debtors' only creditor. There are numerous unsecured creditors as well as significant creditors such as Buck County Bank and Trust Company. Looking at these factors in their totality, I cannot say that the bankruptcy court abused its discretion when it held that the Debtors did not file for bankruptcy in bad faith.

 A second approach used by courts to decide if debtors filed for bankruptcy in bad faith is "to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended. When a debtor is motivated by plausible, legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present...." *In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr.E.D.Pa.1987). Because the totality of the evidence suggests that the Debtors filed their bankruptcy petitions for the legitimate purpose of reorganization, I cannot say that the bankruptcy court's finding of good faith was an abuse of discretion.

A third approach used by courts to determine if a debtor has filed for bankruptcy in bad faith was developed by the court in *In re Yukon Enterprises, Inc.,* 39 B.R. 919 (Bankr.C.D.Cal.1984). The court there held that there is a prima facie showing of bad faith when a creditor establishes that the transfer of distressed property to the debtor was made in close proximity to the debtor's filing for bankruptcy. *Id.* at 921. FNMA did not establish a prima facie showing of bad faith at bar. Here, the Assignment to the Debtors occurred six months before the bankruptcy filing. That is not close enough. The cases to which FNMA cites to support its argument all found that bad faith existed when property was transferred to a debtor within fifteen days of the debtor filing for bankruptcy. *See In re Nelson,* 66 B.R. at 232–33; *In re Rye,* 54 B.R. at 181; *In re Yukon Enterprises, Inc.,* 39 B.R. at 920. *Compare In re Conquest Offshore International, Inc.,* 73 B.R. at 174. Hence, I find

that the bankruptcy court did not abuse its discretion when it found that the Debtors filed their bankruptcy petitions in good faith.

### B. *FNMA Is Not Entitled to Relief From Stay Under 362(d)(2)*

 To obtain relief under § 362(d)(2), a party must show that the debtor does not have equity in the property at issue and that the property is not necessary for the effective reorganization of the debtor. 11 U.S.C. § 362(d)(2). If the party seeking relief from the stay does not establish by a preponderance of the evidence that the debtor lacks equity in the property, the movant has failed to meet its statutory burden of proof. *See In re Opelika Manufacturing Corp.,* 66 B.R. 444, 447 (Bankr.N.D.Ill.1986) (citing *Klanish v. Penn Furniture Co.,* 56 B.R. 184, 186 (Bankr.W.D.Pa.1986)).

Because FNMA has failed to establish that the Assignment constituted a fraudulent transfer, the Debtors hold more than bare legal title to the Property; they hold equity in the property as well. FNMA is thus not entitled to relief from the automatic stay under § 362(d)(2).