In the Matter of Daisey C. NELSON, Debtor.

Bankruptcy No. 85–00286.

United States Bankruptcy Court, D. New Jersey.

June 27, 1986.

David Paul Daniels, Camden, N.J., for debtor.

Wood, Jahos, Broege & Wight by Peter J. Broege, Manasquan, N.J., for Robert M. Wood, Trustee.

Myers, Matteo, Rabil, Pluese & Norcross, by Robert T. Pluese, Cherry Hill, N.J., for Central Mortg. Co.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

The matter presently before the court is a motion to vacate the automatic stay, brought against the debtor, Daisey C. Nelson, by Central Mortgage Company (Central Mortgage). Central Mortgage is a secured creditor of the debtor, holding a first mortgage on the debtor's residence, which is located at 1458 Kenwood Avenue, Camden, New Jersey.

The facts of this case are as follows. The debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on January 17, 1985.[1] On June 17, 1985, Central Mortgage filed the instant motion to vacate the automatic stay. Central Mortgage contends that the subject property was fraudulently transferred to the debtor just prior

to the commencement of the instant bankruptcy case, in order to prevent the completion of a pending foreclosure proceeding. Central Mortgage further asserts that the alleged lack of consideration for the transfer, together with the debtor's alleged lack of good faith, render the transfer void against Central Mortgage. Accordingly, Central Mortgage requests the following relief:

(1) that the automatic stay with respect to the subject property be vacated;

(2) that the property be excluded from the debtor's estate on the grounds that it was fraudulently conveyed to the debtor by the mortgagor, Philip Nelson, and;

(3) to set aside the fraudulent conveyance and permit Central Mortgage to complete its foreclosure action on the property.

The debtor opposes Central Mortgage's motion to vacate the automatic stay on the grounds that: (1) the debtor's Chapter 13 plan was filed in good faith and should be confirmed, and; (2) the transfer of the subject property from Phillip Nelson to the debtor, Daisey Nelson, was not fraudulent.

On or about May 31, 1979, Phillip Nelson, the debtor's son, executed a mortgage bond in the sum of $17,550.00 payable to Central Mortgage Company of New Jersey. On May 31, 1979 Phillip Nelson executed a mortgage to Central Mortgage Company of New Jersey. Pursuant to the mortgage, the land and premises commonly known as 1458 Kenwood Avenue, Camden, New Jersey, was conveyed to Central Mortgage Company of New Jersey. The mortgage provided in part, "this mortgage is given to secure a portion of the purchase money for the above-described premises." The aforesaid mortgage was recorded in the Office of the Camden County Register of Deeds and Mortgages on June 4, 1979. On May 31, 1979 Central Mortgage Company of New Jersey executed an assignment of the mortgage to Central Mortgage Company,

1. This case is governed by the provisions of the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 which was enacted on July 10, 1984.

the creditor herein. The assignment of the mortgage was recorded in the Office of the Camden County Register of Deeds and Mortgages on July 16, 1979.

On or about November 1, 1983, the mortgage payments on the subject property fell into default. Pursuant to the terms of the mortgage, Central Mortgage elected that the entire unpaid principal amount, together with unpaid interest and advances, become immediately due and payable. Also under the terms of the mortgage, upon default, Central Mortgage became entitled to possession of the mortgaged premises. On September 19, 1984, Central Mortgage commenced a foreclosure action regarding the subject property in the Superior Court of New Jersey, Chancery Division, Camden County, naming Phillip Nelson as the defendant. On October 2, 1984 the defendant, Phillip Nelson, was served with a copy of the summons and foreclosure complaint. This service was effected by a copy of the summons and complaint being left by the Camden County Sheriff with the debtor, Daisey Nelson, Phillip Nelson's mother, at the subject premises. On October 5, 1984, a Notice of Lis Pendens was filed. An answer was not filed in response to the foreclosure complaint. Prior to the entry of a final judgment of foreclosure, Phillip Nelson conveyed the subject property to the debtor by Deed dated January 4, 1985. The consideration paid for the transfer was one dollar.

At a hearing before this court on August 28, 1985, the debtor testified that she has resided at the subject property since shortly after June, 1979. The debtor has, since that time, lived at the property with her dependent children. The debtor testified that at the time she moved to the property, she had seven dependent children. At the time of the confirmation hearing, the debtor was living at the property with four dependent children. The debtor stated that the original purchase money mortgage was obtained by her son, Phillip Nelson, and not by herself, because she did not have the financial prerequisites to qualify for a mortgage. The debtor indicated that since she moved into the subject premises, she has been paying the mortgage on the property. She stated that her son moved from the premises sometime in 1980 and that he is presently residing in Georgia. The debtor has been paying the mortgage by money orders upon which both her name and the name of Phillip Nelson appear. The debtor testified that after she commenced the instant bankruptcy proceeding, Central Mortgage accepted three payments from her, those for February, March, and April, 1985 before refusing to accept the payments. Based upon the fact that Central Mortgage accepted three post-petition payments, the debtor's attorney argued that the mortgagee waived its rights.

The debtor filed a proposed plan of reorganization which provides for monthly payments of $135.00 to the Standing Trustee [2] for sixty months to cure estimated arrears to Central Mortgage in the sum of $5,400.00. The plan also provides for the making of regular monthly payments in the sum of $254.98 to Central Mortgage outside of the Chapter 13 plan. Finally, the plan provides for the payment of $1,200.00 to the City of Camden for water and sewer charges. No other creditors are listed in the debtor's petition. A hearing on the confirmation of the debtor's plan was held on August 28, 1985, but confirmation was

---

**2.** The Chapter 13 Standing Trustee is appointed by the United States Trustee for the Districts of Delaware and New Jersey pursuant to 28 U.S.C. § 586(b). The United States Trustee supervises the administration of cases and trustees in cases under chapters 7, 11 and 13 of title 11. 28 U.S.C. § 586(a)(3). The Chapter 13 Standing Trustee is charged under 11 U.S.C. § 151302 with performing duties specified under 11 U.S.C. § 704, including: accounting for property received; ensuring that the debtor performs his or her intention regarding the retention or surrender of secured property; investigating the financial affairs of the debtor; examining proofs of claims; objecting to allowance of claims; opposing the discharge of a debtor, if advisable; furnishing such information concerning the estate of the debtor as is requested by a party in interest; preparing and filing a final report and final account of the administration of the estate, and; appearing at hearings concerning the value of secured property, confirmation of a plan and modification of a plan after confirmation.

held in abeyance pending the court's decision on Central Mortgage's motion. At the time of the August 28, 1985 hearing, the debtor was current in her payments to the Standing Trustee pursuant to her Chapter 13 plan. The Chapter 13 Standing Trustee has recommended confirmation of the debtor's plan.

Pursuant to 11 U.S.C. § 362(a), the filing of a petition in bankruptcy operates as a stay, subject to certain exceptions, of actions against a debtor, including the continuation of foreclosure proceedings. 11 U.S.C. § 362(a)(1). Relief from the automatic stay may be granted under 11 U.S.C. § 362(d). Section 362(d) provides in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization.

It has been specifically noted that, " '[t]he lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, *but is not the only cause.*' " *In re Rye*, 13 B.C.D. 853, 854 (Bkrtcy.D.S.C.1985) (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343 (1977); S.Rep. No. 95–589, 95th Cong., 2nd Sess. 52 (1978)), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5838, 6299.

This court must determine whether the transfer of the subject property to the debtor, shortly before her filing of a petition in bankruptcy, constituted bad faith so as to grant Central Mortgage's request for relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1), and permit it to continue with its foreclosure proceedings.

■ In the case of *In re Yukon Enterprises, Inc.*, 39 B.R. 919 (Bkrtcy.C.D.Cal. 1984) (*Yukon* ), the court held that when a creditor establishes that a Chapter 11 debtor received distressed property "in close proximity" to the filing of a petition in bankruptcy, a prima facie showing of bad faith has been demonstrated. 39 B.R. at 921. *Accord, In re Rye*, 54 B.R. 180, 13 B.C.D. 853, 854 (Bkrtcy.D.S.C.1985). Once such a rebuttable presumption of bad faith has been shown, the burden shifts to the debtor "to establish good and sufficient reasons why the relief should not be granted." *Id.*

In *Yukon*, three condominium units, which were in serious default were transferred to the debtor, a newly formed corporation. The deed transferring title to the debtor was recorded just two days prior to the commencement of the Chapter 11 case. The debtor's schedules reflected that the debtor's only assets were the three condominium units at issue, and that the debtor's only unsecured debt was to its bankruptcy attorney. The creditors in *Yukon* sought relief from the automatic stay in order to foreclose on the three condominium units on the grounds that the petition was filed in bad faith. After acknowledging that "close proximity" is not a precisely defined concept, the *Yukon* court concluded that the "close proximity" standard clearly had been met in the *Yukon* case. The court further noted, with regard to the concept of close proximity, that "most people will know it when they see it." 39 B.R. at 921.

■ In *Yukon*, the court further established that if a creditor proves that its substantive or procedural rights have been adversely affected by a property transfer and subsequent bankruptcy filing, sufficient cause, pursuant to 11 U.S.C. § 362(d)(1) exists for relief from the automatic stay. 39 B.R. at 921–22. *See also, In re Rye*, 54 B.R. 180, 13 B.C.D. 853, 854 (Bkrtcy.D.S.C.1985). Furthermore, the *Yukon* court noted that a bad faith filing is "an abuse of the bankruptcy process and is

offensive to the integrity of the bankruptcy system." 39 B.R. at 922. Consequently, even if a debtor is able to show that a creditor's rights have not been adversely affected by a bad faith filing, the presumption of bad faith will not automatically be overcome. Ultimately, the *Yukon* court concluded that, "in order to overcome the presumption of bad faith the debtor in a Chapter 11 must establish that a reorganization is more likely than would have been the case prior to the transfer to the debtor." 39 B.R. at 922. In lifting the automatic stay, the *Yukon* court concluded that because the transferor had not transferred all of its assets to the debtor, reorganization by the debtor was less likely after the transfer than it was prior to the transfer of the three condominium units.

The case of *Duggan v. Highland—First Ave. Corp.*, 25 B.R. 955 (Bkrtcy.C.D.Cal. 1982) (*Duggan* ), also considered whether a debtor acted in good faith in filing a Chapter 11 petition where assets were transfered to the debtor immediately prior to the filing. In *Duggan,* the court set forth various factors which constitute "badges of bad faith." Instances which constitute "badges of bad faith" that are relevant to the instant proceeding include: (1) the only assets transferred to the debtor are in imminent and substantial danger of loss by foreclosure sale; (2) the only significant creditors are the creditors seeking foreclosure; (3) the filing of the case was not precipitated by, nor related to, other creditor pressure, and; (4) there are substantially no unsecured creditors. 25 B.R. at 961. The *Duggan* court established that whenever the facts of a case contain "badges of bad faith", the conduct of the debtor should be scrutinized to determine whether the commencement of the bankruptcy case constituted an abuse or misuse of bankruptcy jurisdiction. *Id.* In establishing the test applicable to determine whether a debtor has acted in good faith, the *Duggan* court stated that the timing of the transfer is not dispositive of the issue. Instead, the court concluded that the detriment to creditors is the key inquiry. If substantive or procedural rights of creditors have been altered or eroded by the transfer and subsequent filing, bad faith has been exercised. To determine whether a creditor's rights have been adversely affected, the *Duggan* court set forth the following inquiries:

(1) Would the secured creditor have had any greater potential for foreclosure or realization on its claim if the petition had been filed by the transferor?

(2) Did the transfer to the new entity improve the debtor's ability to protect or remove collateral from the secured creditor's reach, or alter the secured creditor's rights in the collateral?

(3) Did the transaction improve, or at any rate not decrease, the debtor's potential to provide adequate protection to the secured creditor's interest in the collateral?

(4) Was the transaction motivated by an intent and desire to avoid submitting the actual entities in interest to the jurisdiction of the court, together with other assets not transferred to the debtor? Is this an "asset-culled entity"?

(5) Was the petition filed solely for the purpose of thwarting and frustrating secured creditors in the enforcement of lien rights under circumstances which amount to "malicious", "frivolous", or "unwarranted" delay?

*Id.* at 962 (footnote omitted).

■ Finally, a petition in bankruptcy is filed in bad faith when the relief sought by the filing is exclusively the operation of an automatic stay in order to prevent a foreclosure. *Matter of 299 Jack-Hemp Associates*, 20 B.R. 412 (Bkrtcy.S.D.N.Y.1982); *In re Zed, Inc.*, 20 B.R. 462 (Bkrtcy.N.D.Cal. 1982); *In re Alison Corp.*, 9 B.R. 827 (Bkrtcy.S.D.Cal.1981).

■ Although the aforementioned cases involve proceedings under Chapter 11 of the Bankruptcy Code, they are relevant to the disposition of the matter presently before the court, since debtors in proceedings under Chapter 13 of the Bankruptcy Code are held to the same good faith requirement as are debtors in Chapter 11 proceed-

ings. *See,* 11 U.S.C. §§ 1129(a)(3) and 1325(a)(3).

Based upon the application of the foregoing law to the facts presently before the court, Central Mortgage's motion to vacate the automatic stay is hereby granted.

■ Prior to discussing the application of 11 U.S.C. § 362(d) to the facts presently before the court, the court will address the debtor's waiver argument. It is clear that Central Mortgage did not waive any of its rights by accepting three post-petition mortgage payments from the debtor. The District Court for the District of New Jersey has discussed the definition of "waiver" in connection with a corporation's alleged breach of an agreement in the case of *Mayer v. Development Corp. of America,* 541 F.Supp. 828 (D.N.J.1981), *aff'd,* 688 F.2d 822 (3d Cir.1982). Judge H. Curtis Meanor, writing for the court noted:

> Waiver is usually defined as 'the voluntary and intentional relinquishment of a known right'; words of similar import are frequently used by the courts:
>
> 'A waiver is an intentional abandonment or relinquishment of a known right or advantage which, but for such waiver, the party would have enjoyed. It is the voluntary act of the party.... A waiver may be either verbal or in writing; and it is not necessary that the waiver should be direct and positive. It may result from implication or usage, or from any understanding between the parties which is of a character to satisfy the mind that a waiver is intended. The assent must, however, be clearly established and will not be inferred from doubtful or equivocal acts or language.'

541 F.Supp. at 856 (quoting 5 S. Williston, *Law of Contracts* § 678, at 238 to 240 (3d ed. 1961)).

In the matter presently before the court, Central Mortgage did not make a "voluntary and intentional relinquishment" of its rights. There was not a "clearly established" assent on the part of Central Mortgage to accept the debtor as the transferee

of the property or as a mortgagor. On the contrary, it appears that Central Mortgage had no knowledge of the transfer of the property.

■ Turning to the law regarding the automatic stay, it is indisputable that the subject property was transferred to the debtor "in close proximity" to the filing of the bankruptcy petition pursuant to the close proximity standard set forth in *In re Yukon Enterprises, Inc.,* 39 B.R. 919 (Bkrtcy.C.D.Cal.1984). According to *Yukon,* a prima facie showing of bad faith has been made, and the burden is upon the debtor "to establish good and sufficient reasons why relief under 11 U.S.C. § 362(d)(1) should not be granted." *Id.* at 921. The debtor in the matter presently before the court has failed to make such a showing. Also, pursuant to *Yukon,* the instant debtor is required to demonstrate that her successful reorganization is more likely now than it was prior to the transfer. The debtor has also failed in this regard. The transfer of the subject property to the debtor only served to increase the debtor's liabilities and thereby decrease, and not increase, her prospects of a successful reorganization. The income and expense statement filed by the debtor indicates that the debtor's income is derived from welfare, child support and food stamps. At the August 28, 1985 hearing, the debtor testified that she was receiving income from welfare, medicaid, food stamps, child support, contributions from several of her children, and money earned by the debtor as compensation for domestic work. Clearly, the transferring of property, which had an outstanding mortgage due in the amount of approximately $18,000.00, to an individual in such financial straits does not increase the likelihood that she will effect a successful reorganization.

■ In applying the standards set forth in the case of *Duggan v. Highland-First Ave. Corp.,* 25 B.R. 955 (Bkrtcy.C.D.Cal. 1982), this court finds that "badges of bad

faith" are presented by the instant facts. The "badges of bad faith" which are existent are:

(1) the subject property, the only asset transferred to the debtor, is in imminent and substantial danger of loss by foreclosure sale; (2) the debtor's only significant creditor is Central Mortgage, and; (3) the filing of the petition was not precipitated by, nor related to, the pressure of other creditors. According to the *Duggan* court, whenever such "badges of bad faith" exist, the debtor's conduct must be scrutinized to determine whether the filing of the bankruptcy petition constituted an abuse or misuse of bankruptcy jurisdiction. It is evident that the debtor presently before the court commenced the instant bankruptcy proceeding solely in order to forestall Central Mortgage's foreclosure efforts. This motive is an abuse and misuse of bankruptcy jurisdiction. In this case the deed from Phillip Nelson to the debtor was executed just thirteen days prior to the filing of the debtor's Chapter 13 petition. It is clear that pursuant to the standard set forth in *Duggan v. Highland-First Avenue Corp.*, 25 B.R. 955, 962 (Bkrtcy.C.D.Cal.1982), the substantive and procedural rights of the movant were adversely affected by the transfer. The debtor was unable to present evidence to establish good and sufficient reasons why relief from the automatic stay should not be granted. Accordingly, Central Mortgage is entitled to relief from the stay for "cause" pursuant to 11 U.S.C. § 362(d)(1). Having found "cause" to vacate the automatic stay this court need not address the issue of fraudulent transfer as raised by the movant.

Accordingly, Central Mortgage's motion for relief from the automatic stay in order to continue foreclosure proceedings is hereby granted.

The Court shall schedule a further hearing on the confirmation of the debtor's Chapter 13 plan.

An order shall be submitted in accordance with this opinion.