**In re Timothy E. GIRDAUKAS, Debtor.**

**Bankruptcy No. 88–02849.**

United States Bankruptcy Court,
E.D. Wisconsin.

Oct. 18, 1988.

Timothy Girdaukas, pro se.

James Conway, Joseph Hemsing, Sheboygan, Wis., for debtor.

Thomas King, Standing Chapter 13 Trustee, pro se.

Jeff Liotta, Milwaukee, Wis., for Federal.

Deirdre Elliott, Milwaukee, Wis., for Van Engel.

## DECISION

DALE E. IHLENFELDT, Bankruptcy Judge.

Federal Insurance Company (Federal) and Kurt Van Engel Commission Co., Inc. (Van Engel) have objected to confirmation of the debtor's proposed plan on the ground that it has not been proposed in good faith as required by Section 1325(a)(3) of the Bankruptcy Code.[1] Hearing on the objections was had on September 20, 1988. At the hearing, the debtor appeared in person and by Attorneys James Conway and Joseph Hemsing; the standing chapter 13 trustee, Thomas King, appeared in person; Federal appeared by Attorney Jeff Liotta; and Van Engel appeared by Attorney Deirdre Elliott.

The debtor is presently employed by Austin Grey Iron Foundry of Sheboygan, Wisconsin. For 24 years and until a year or so ago, he had worked as a produce buyer for Schultz Sav-O Stores, Inc. (Schultz). On May 26, 1988, Schultz filed a civil action in the U.S. District Court against Kurt Van Engel, Kurt Van Engel Commission Co. and the debtor. The complaint in that action alleges that the debtor violated various state and federal laws by accepting kickbacks from Van Engel. It states that on and after 1983, as purchaser of fruits and vegetables for Schultz, he had contracted to pay excessive prices in return for cash payments (kickbacks) to himself. A deposition of the debtor in that action, scheduled to be held on June 29, 1988, was canceled when the debtor filed his chapter 13 petition on June 28, 1988. Federal is involved because of employee theft insurance which it afforded to Schultz. Schultz has submitted a claim to Federal alleging losses in excess of $250,000 as a result of dishonest and fraudulent conduct on the part of the debtor.

The debtor's schedules list the following assets and liabilities

## ASSETS

| Tangible | Value | Lien or Mortgage | Claimed Exempt |
|---|---|---|---|
| Homestead in Kohler, Wis. | $74,020. | 54,046.46(1) | 20,000. |
| 1987 Nissan Auto | 8,500. | 8,615.39(2) | |
| 1981 Ford Granada Auto | 1,500. | — | 1,000. |
| Household Furniture | 4,000. | — | 4,000. |
| Clothing | 200. | — | 200. |
| (1) United Savings & Loan Assn. | | | |
| (2) Schultz Sav-O Credit Union | | | |
| Cash and Accounts | | | |
| Credit Union | 311.79 | | — |
| Affiliated Fund (IRA) | 1,799.50 | | — |
| United S & L | 1,869.84* | | — |
| " " (IRA) | 2,000.00# | | — |
| Prudential Life Ins. policies | 7,126.51 | | 7,126.51 |
| Austin Grey Iron Foundry Profit Sharing Trust | 89,285.40 | | 89,285.40 |

* Owned jointly with spouse
# Shown in schedules both as owned solely by the debtor and as owned jointly with spouse

Besides the two secured claimants set out above, unsecured creditors are listed in the schedules as follows:

1. Section 1325(a)(3) provides:
   (a) Except as provided in subsection (b), the court shall confirm a plan if—
      . . . .
      (3) the plan has been proposed in good faith and not by any means forbidden by law;

| Creditor | Consideration or basis for debt | Amount of Claim | If disputed, amount admitted by debtor |
|---|---|---|---|
| Elan Fin. Services | Mastercard credit card | $4,444.03 | Not disputed |
| Kurt Van Engel Commission Co., Inc. ) | Alleged civil damages under "RICO", "PACA" and "WCCEA" and other federal | Unknown | All claims unliquidated, contingent and disputed |
| Schultz Sav-O Stores, Inc.) | and state laws. (Actions pending-U.S. District Court-Eastern | $14,000,000 plus fees and costs | " " |
| Kurt Van Engel ) | District of Wisconsin.) | Unknown | " " |
| Federal Insurance | Indemnification as insurance carrier for Schultz Sav-O Stores, Inc. | Unknown | " " |

(Mrs. Girdaukas is jointly liable on the United S & L and Elan obligations.)

The United Savings and Loan Association home mortgage is current, and all monthly mortgage payments are to be made to United by the debtor direct. For all other creditors, the debtor has proposed a three year plan, with bi-weekly payments of $175 until March 1, 1989 and $250 bi-weekly thereafter. The debtor's gross income for the last calendar year was $30,-814.00 and that of Mrs. Girdaukas was $319.00. Her occupation is described as "homemaker and seamstress." According to the budget in his schedules, monthly take home pay of $2,420 and expenses of $2,058.42, the debtor has committed all of his projected disposable income to make payments under the plan. § 1325(b)(1)(B). Information provided by the debtor in his schedules indicates that creditors will receive at least as much under the plan as they would if the estate of the debtor were liquidated under chapter 7. § 1325(a)(4).

About $8,560, 55% of the available funds, is to be paid to the credit union at the monthly contract rate of $237.79, so as to satisfy its lien on the Nissan automobile. The remaining 45% of available funds, estimated at about $7,000, is to be paid to the unsecured creditors. The plan states that the unsecured creditors are "to be paid less than 10% of accepted claim." Claims have been filed by Elan and the two secured claimants.

The position of the debtor is that the alleged conspiracy between himself and Van Engel ended in 1987—that he is now the "little guy" in a dispute between two corporate giants. He himself disputes the claims of Schultz and Van Engel but will not formally dispute them as they may be filed in this case. Inasmuch as he is committing all of his projected disposable income for the next three years to make payments under the plan, the amount of the claims they might file is immaterial so far as he is concerned.

His stated purpose in filing is to avoid the tremendous expense of defending himself in the civil action and to make this money available to his creditors instead. Practicality is the point—to save the cost of participating in the law suit. He has been sued for $14,000,000 and makes $30,000 a year. The cost of contesting the case exceeds his ability to pay. Creditors will be better off in that they will receive this money instead of its being spent in defending the law suit. The debtor notes that although the claims of Van Engel and Federal may be nondischargeable, that is not by itself a ground for refusing to confirm. *In re Chaffin*, 816 F.2d 1070, 1074 (5th Cir.1987).

Referring to the Section 341 hearing held on August 26, 1988, the trustee, Thomas King, said that the debtor had testified concerning his current assets but, invoking his constitutional privilege under the Fifth Amendment, had declined to answer questions regarding the amount and character of his debts. The trustee was thus unable to reach any conclusion as to the character of the debt. Having in mind that one should look to the totality of the circumstances insofar as the issue of good faith is concerned, *In re Smith*, 848 F.2d 813 at 817–818 (7th Cir.1988), including such

factors as the character of the debt, the timing of the petition, and the manner of treatment of the debt, the trustee said he could not recommend that the plan was filed in good faith or that good faith exists.

Van Engel's attorney noted that the debtor had also invoked the Fifth Amendment privilege at a Bankruptcy Rule 2004 examination on August 18, 1988, refusing to answer questions as to assets he had prior to the filing of the chapter 13 petition, or to verify income tax returns that he had filed.

In response to these comments about the debtor's invoking the Fifth Amendment privilege, his attorney said that he would answer any questions that were asked him concerning his present circumstances. He is willing to testify that the schedules which he filed are true and correct and that they accurately describe all of his assets. The questions he refused to answer and felt he must refuse to answer concerned his transactions with the Van Engel company. He said that if the debtor was questioned with respect to his past transactions with Van Engel, he would claim his Fifth Amendment privilege. Presumably such questions would involve the receipt and possession and transfer or disposition of assets during the course of his dealings with Van Engel.

■ A debtor may assert the Fifth Amendment privilege in a bankruptcy proceeding. *In re Martin–Trigona*, 732 F.2d 170 (2d Cir.1984), cert. den. 469 U.S. 859, 105 S.Ct. 191, 83 L.Ed.2d 124 (1984). Absent a grant of immunity, a debtor can assert the privilege, refuse to testify, and still retain the right to a chapter 7 discharge under § 727(a)(6), and it has been held that these rights granted under § 727(a)(6) are also available to the debtor under § 727(a)(5). *In re Potter*, 88 B.R. 843 (Bankr.ND IL 1988) The fact that Fifth Amendment rights are specifically granted to the debtor in a chapter 7 case, however, does not necessarily mean that the debtor can safely claim them in the context of a chapter 13 case. Those sections are only applicable to a case under chapter 7. § 103(b).

■ It is questionable whether a debtor can ever obtain confirmation of a chapter 13 plan while claiming the Fifth Amendment privilege. If the debtor has the burden of proof on the issue of good faith and refuses to testify, it will be very difficult for him to meet that burden.[2] *Norton Bankruptcy Law and Practice*, § 75.02, Part 75—Page 6, states:

> There is a split of authority on the allocation of burden of proof at a hearing on confirmation of a Chapter 13 plan. Given the ordinary posture of the debtor as the proponent of the plan and the requirement of Code § 1325 that the plan shall be confirmed if the court is satisfied that the stated conditions are met, there is authority for assigning to the debtor the burden of proof at a hearing on confirmation of a Chapter 13 plan.

This court holds, as have most other courts facing this issue, that the debtor, as proponent of the plan, has the burden of establishing that the plan has been proposed in good faith. *In re Warren*, 89 B.R. 87, 93 (9th Cir. BAP 1988); *In re Wolff*, 22 B.R. 510, 512 (9th Cir. BAP 1982); *In re Haas*, 76 B.R. 114 (Bankr.SD Ohio 1987); *In re Fries*, 68 B.R. 676 (Bankr.ED PA 1986); *In re Schyma*, 68 B.R. 52 (Bankr.MN 1985); *In re Nelson*, 66 B.R. 231 (Bankr.NJ 1986); *In re Goodavage*, 41 B.R. 742 (Bankr. ED VA 1984); *In re Girardeau*, 35 B.R. 9 (Bankr.SC 1983); *In re Ponteri*, 31 B.R. 859 (Bankr.NJ 1983); *In re Lincoln*, 30 B.R. 905 (Bankr.CO 1983); *In re Elkind*, 11 B.R. 473· (Bankr.CO 1981).

Contra., *In re Mendenhall*, 54 B.R. 44 (Bankr.WD AK 1985). Cf. *In re Hines*, 723 F.2d 333 (3rd Cir.1983); 5 *Collier on Bankruptcy* ¶ 1324.01[3], p. 1324–5. (15th ed. 1985).

■ The court holds further that in the absence of any objections to confirmation, it is nevertheless the independent duty of the court to determine whether a plan has been proposed in good faith. *In re Williams*, 3 B.R. 728 (Bankr. ND IL 1980);

---

**2.** It is conceivable that under certain circumstances a 100% plan might be confirmed.

*In re Unichem Corp.*, 72 B.R. 95 (Bankr. ND IL 1987).[3] In a case where no creditors have appeared in opposition to confirmation and the court has raised the issue of good faith sua sponte, there is no one other than the debtor, apart from the court itself, on whom the burden could rest.

One factor to be considered in the "totality of circumstances" test of good faith is whether or not the debtor has accurately disclosed all material information on his plan. *In re Smith*, supra at 821. This information is needed to determine whether the plan has been proposed in good faith (§ 1325(a)(3)), and whether creditors will receive at least as much as they would have received if the estate were liquidated under chapter 7 (§ 1325(a)(4)). By refusing to answer questions about pre-petition assets and transactions and the circumstances under which the debts were incurred, the debtor compels the court and creditors to take his statements on faith, without being permitted to inquire into the possibility of voidable transfers or concealed assets and thus to ascertain whether the debtor's plan in fact complies with the provisions of chapter 13 and the other applicable provisions of the Code. § 1325(a)(1).

The proposed plan indicates that the unsecured creditors will be paid less than 10% of their claims. The plan does not say how much less. Although the debtor says that creditors will be better off under his plan, in that they will receive $7,000 instead of having it spent in defending the litigation, it is obvious that the two objecting creditors do not agree. Assuming it is unlikely that a judgment for as much as $14 million would be entered against the debtor in the civil action, still it can be noted that the $7,000 promised to unsecured creditors is in fact only 1/2,000 of that and alternatively, if the plaintiff or the objecting creditors should obtain a judgment in the comparatively modest amount of $100,000 or more, the debtor would not be eligible to even file under chapter 13. § 109(e).

The debtor says he has applied all of his disposable income to the plan. Assuming that to be the fact, although arguable in some respects, good faith is nevertheless a discrete and paramount test that is separate and distinct from the best effort requirement. *In re Warren*, 89 B.R. 87 (9th Cir. BAP 1988). "The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case." *In re Rimgale*, 669 F.2d 426, 431 n. 14 (7th Cir.1982). The "totality of the circumstances" test merges factors such as a debtor's motive for seeking chapter 13 relief, how the debt was incurred, and whether such debts are nondischargeable in a chapter 7 plan to determine good faith. The "totality of the circumstances" test focuses upon whether a plan abuses "the provisions, purpose or spirit of [chapter 13]." *In re Smith*, supra at p. 818.

Despite a most moving and eloquent plea by James Conway on behalf of the debtor, the court believes that the debtor's plan has not been proposed in good faith and that it cannot be confirmed. The facts demonstrate that this chapter 13 case was filed solely to avoid meeting the charges made in the civil action and to avoid being required to pay the resulting obligations. In essence, it is a veiled chapter 7 case. If there is any substance to the claims made against the debtor, they are clearly nondischargeable. The debtor should not be permitted to nullify major provisions of § 523 by paying a relatively insignificant portion of the nondischargeable debt. *In re Warren*, supra. The court finds that this plan does not represent a good faith effort on the part of the debtor to pay his creditors within the intent and meaning of chapter 13, but rather that it is violative of the provisions, purpose or spirit of chapter 13.

---

**3.** Bankruptcy Rule 3020(b)(2) provides:

**(2) Hearing.** The court *shall* rule on confirmation of the plan after notice and hearing as provided in Rule 2002. If no objection is timely filed, the court *may* determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues. (Emphasis added).

This decision constitutes the court's findings of fact and conclusions of law, as provided in Rule 52 FR Civ.P. and Bankruptcy Rule 7052. An order will be entered in accordance with this decision.