897 F.2d 529
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James E. HARDIN, James C. Hardin, and Ralph Majors, Appellants
v.
Larry Edward CALDWELL, Appellee
 No. 88-5915.
 United States Court of Appeals, Sixth Circuit.
 March 6, 1990.
 
 1
 Before NATHANIEL R. JONES and BOGGS, Circuit Judges, and JULIAN ABELE COOK, Jr., District Judge*.
 
 
 2
 JULIAN ABELE COOK, Jr., District Judge.
 
 
 3
 On August 6, 1987, the debtor in bankruptcy, Larry Caldwell, filed a petition under Chapter 13[1] in an effort to, inter alia, discharge an outstanding civil judgment. The Bankruptcy Court confirmed Caldwell's Chapter 13 reorganization plan and the district court affirmed. Presently before this Court is an appeal by the three judgment creditors, all of whom had been listed in Caldwell's petition.[2] For the following reasons, we reverse the judgment of the District Court and conclude that Caldwell's Chapter 13 plan was not submitted in "good faith" as prescribed by Section 1325(a)(3) of the Bankruptcy Code.[3]
 
 
 4
 * In 1979, the Appellants filed a civil complaint in a Tennessee state court against Caldwell and three other persons, charging each of them with assault and battery, conspiracy to maliciously prosecute, false arrest and false imprisonment.[4] On February 29, 1984, a judgment in the sum of $60,000 was entered against the four defendants. Each Appellant was awarded a joint and several judgment of $10,000 in compensatory damages and $10,000 in punitive damages. On April 23, 1985, the Tennessee Court of Appeals upheld the compensatory damage awards but deemed the punitive damage awards to be excessive and reduced each award to $5,000. On August 12, 1985, the Tennessee Supreme Court denied Caldwell's application for leave to appeal.
 
 
 5
 On August 6, 1987, nearly two years after his final state court appeal had been denied, Caldwell filed a bankruptcy petition under Chapter 13, in which he proposed to pay the trustee the sum of $48.00 per week for thirty-six (36) months, plus any subsequently received tax refunds.
 
 
 6
 On September 11, 1987, each of the Appellants, in their respective capacities as judgment creditors, filed their proofs of claims and objections to Caldwell's plan of reorganization.[5] During a hearing before the Bankruptcy Court on January 18, 1988, they voiced their objections to Caldwell's plan, contending that it (1) had not been proposed in "good faith," as required by 11 U.S.C. Sec. 1325(a)(3) and (2) failed to contain any provision for the application to his debts of the projected disposable income over the pertinent three-year period in contravention of 11 U.S.C. Sec. 1325(b)(1)(B).[6]
 
 
 7
 Despite their protestations, the Bankruptcy Court approved Caldwell's Chapter 13 plan after he agreed to commit $65.00 per month to the plan. On the issue of good faith, the Bankruptcy Court opined that "although the payment is only approximately nine per cent [sic], eight point eight per cent [sic], this should not be considered as an element of good faith where the plan meets the disposable income test of Section 1325(b)."[7] The Bankruptcy Court supported its good faith decision by concluding that (1) Caldwell's pre-petition conduct had not been directed toward obtaining a financial advantage, (2) his creditors would receive a greater amount of repayment under the reorganization plan than they would receive in liquidation, and (3) the secured creditors had not received repayment to the detriment of the unsecured creditors.[8]
 
 
 8
 On appeal, the District Court affirmed on July 21, 1988, holding that the Bankruptcy Court had acted within its discretion when the plan of reorganization was confirmed.
 
 II
 
 9
 The meaning of "good faith" under 11 U.S.C. Sec. 1325(a)(3) is not specifically addressed in the Bankruptcy Code. However, in In re Caldwell, 851 F.2d 852 (6th Cir.1988), we outlined the legal standards which should govern when attempting to determine whether a Chapter 13 plan was submitted in "good faith" as required by Section 1325(a)(3):
 
 
 10
 "A bankruptcy judge's finding that a debtor's plan is proposed in good faith is a finding of fact reviewed under the clearly erroneous standard." Matter of Metz, 820 F.2d 1495, 1497 (9th Cir.1987) (collecting cases).
 
 
 11
 Recently, another panel of this court clarified the analysis required for a determination of a debtor's good faith under 11 U.S.C. Sec. 1325(a)(3). In Re Okoreeh-Baah, 836 F.2d 1030 (6th Cir.1988), concluded that "a good faith determination under Sec. 1325(a)(3) requires an inquiry into all the facts and circumstances of a debtor's proposed plan." Id. at 1033 (collecting cases). [ ...] [T]he panel [in Okoreeh-Baah] wrote,
 
 
 12
 a debtor's pre-petition conduct is but one element in the debtor's total circumstances; the good faith calculus requires the use of discretion by the bankruptcy judge
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.
 
 
 16
 Okoreeh-Baah, 836 F.2d at 1033.
 
 
 17
 Although the panel in Okoreeh-Baah stated that it could not "promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation," the court did cite two cases which list specific factors relevant to a good faith analysis, [ ...] In re Estus, 695 F.2d 311, 316-17 (8th Cir.1982). [ ... W]e conclude that the list provided in In re Estus is a particularly succinct and clear statement of some of the factors that a court may find meaningful in making its determination of good faith." Estus, 695 F.2d at 317. Accordingly, we quote with approval the Estus list:
 
 
 18
 (1) the amount of the proposed payments and the amount of the debtor's surplus;
 
 
 19
 (2) the debtor's employment history, ability to earn and likelihood of future increases in income;
 
 
 20
 (3) the probable or expected duration of the plan;
 
 
 21
 (4) the accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
 
 
 22
 (5) the extent of preferential treatment between classes of creditors;
 
 
 23
 (6) the extent to which secured claims are modified;
 
 
 24
 (7) the type of debt sought to be discharged and whether such debt is nondischargeable in Chapter 7;
 
 
 25
 (8) the existence of special circumstances such as inordinate medical expenses;
 
 
 26
 (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
 
 
 27
 (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
 
 
 28
 (11) the burden which the plan's administration would place upon the trustee.
 
 
 29
 We note that the Estus list can be supplemented with the following considerations;
 
 
 30
 (1) whether the debtor is attempting "to abuse the spirit of the Bankruptcy Code," is a legitimate factor to consider, ...
 
 
 31
 (2) "good faith does not necessarily require substantial repayment of the unsecured claims," ...
 
 
 32
 (3) the fact a debt "is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13," ..., and
 
 
 33
 (4) the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not, per se, evidence of bad faith but may still be considered as part of the totality of the circumstances analysis....
 
 
 34
 We emphasize, however, that no list is exhaustive of all the conceivable factors which could be relevant when analyzing a particular debtor's good faith.... We also stress that no one factor should be viewed as being a dispositive indication of the debtor's good faith.
 
 
 35
 In re Caldwell, 851 F.2d at 858-60 (citations omitted) (footnote omitted).
 
 
 36
 In the case sub judice, it is important to note that Caldwell's debt to the judgment creditors is nondischargeable under Chapter 7.[9] In another bankruptcy case involving a proposed nominal repayment of nondischargeable debt that Caldwell's father owed to these same judgment creditors,[10] we recently addressed the standards requisite to a Chapter 13 plan:
 
 
 37
 Discharge under Chapter 13, though a salvation for some debtors, is a loophole for others. The good faith, or lack of it, with which the plan is proposed, distinguishes a sincere effort at repayment from a false one. Courts should not approve Chapter 13 plans which are nothing more than "veiled" Chapter 7 plans. In re Girdaukas, 92 B.R. 373, 377 (Bankr.E.D.Wisc.1988). A Chapter 13 plan which proposes to repay only a small portion of a debt which could not be discharged under Chapter 7 deserves "particular scrutiny." In re Warren, 89 B.R. 87, 95 (Bankr. 9th Cir.1988).
 
 
 38
 The party who seeks a discharge under Chapter 13 bears the burden of proving good faith. Girdaukas, 92 B.R. at 376. Best efforts under 11 U.S.C. Sec. 1325(b), without more, are not enough. Id. at 377.
 
 
 39
 In re Caldwell, Nos. 88-6404, 88-6405, slip op. at 4-5 (6th Cir. Feb. 9, 1990). When presented with a reorganization plan that proposes nominal payments of a nondischargeable debt, "particular scrutiny"[11] requires that the court consider the petitioner's best efforts, as well as the other factors noted above, in order to determine whether the plan was motivated by a sincere intention to repay the creditors. See id.
 
 
 40
 At the confirmation hearing in the instant case, the Bankruptcy Court concluded that Caldwell's plan comported with the best effort test and, as such, evidence of his minimal repayment was irrelevant to the good faith test.[12] In fact, the Bankruptcy Court confirmed the plan, in large part, based on its conclusion that Caldwell agreed to commit all of his projected disposable income to repay his creditors, as required by 11 U.S.C. Sec. 1325(b).[13] As a matter of law, a best effort--standing alone--does not satisfy the good faith requirement.
 
 
 41
 The record in this case suggests that Caldwell's decision to file in bankruptcy was not motivated by a sincere desire to repay his creditors but represents an attempt by him to escape the consequences of a civil judgment. Such a motivation clearly does not comport with the spirit of the Bankruptcy Code.
 
 
 42
 Caldwell maintains, and the Bankruptcy Court noted, that he "doesn't believe that he did anything wrong in connection with the state court judgment and ... that the judgment was wrongfully placed against him."[14] In addition, no payments have been made on the judgment because Caldwell "didn't think [he] owed anything on this judgment."[15] These factors, such as the debtor's lack of subjective remorse for the debt incurred, are indicia of bad faith. See In re Kourtakis, 75 B.R. 183, 188 (E.D.Mich.1987) ("Clearly, [debtor] does not accept the full measure of the verdict against him and has filed this bankruptcy in substantial part to effect a reduction of the verdict. [Debtor's] intentions in this regard are thus not entirely honest").
 
 
 43
 In the present case, Caldwell elected not to extend his plan beyond the minimum three year period even though only a nominal amount of all unsecured claims would be paid during this limited time frame. If Caldwell had been sincerely interested in attempting to repay his debts, he could have proposed a five year plan which would have resulted in a much larger distribution for his unsecured creditors. In addition, Caldwell's disregard for the financial interests of his creditors was evidenced by his answer when asked whether he would pay into the plan for a five year period: "Of course, I would rather not, but if that's what I need to do, that's what I'll do."[16]
 
 
 44
 Finally, certain pre-confirmation conduct reflects Caldwell's bad faith. In his August 1987 Chapter 13 plan, Caldwell proposed to pay all of his income tax refunds to the trustee. Notwithstanding this promise, Caldwell elected to expend an income tax refund of $354.00, which he had received subsequent to the filing of his Chapter 13 petition, to repair his motor vehicle rather than retaining the money on behalf of his unsecured creditors. Although Caldwell correctly maintains that he spent the income tax refund prior to the confirmation of his Chapter 13 plan, his decision to exhaust the money during the pendency of his Chapter 13 petition further evinces his desire to void the civil judgment rather than an attempt to satisfy the judgment.[17]
 
 
 45
 The following factors, when considered together, have led us to the inescapable conclusion that Caldwell's plan was not designed to repay his creditors but was primarily created to avoid the payment of a civil judgment: (1) the plan involves a Chapter 7 nondischargeable debt, (2) the unsecured creditors will receive minimal payment under the plan, (3) the plan is of a limited duration, (4) Caldwell's lack of remorse and refusal to accept the validity and efficacy of the judgment against him, (5) his refusal to pay any amount on the judgment, and (6) Caldwell's pre-plan confirmation conduct.[18] After reviewing Caldwell's plan with "particular scrutiny," we hold that it was clear error for the Bankruptcy Court to conclude that the plan satisfied the good faith requirement of Section 1325(a)(3).
 
 
 46
 The Bankruptcy Code is intended to provide a fresh start for those persons who are inundated in monetary debt. See Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1933). Congress decided that persons, who attempt to reorganize, may discharge a debt that is otherwise nondischargeable in liquidation. 11 U.S.C. Sec. 1328; see In re McAloon, 44 B.R. 831, 835 (Bankr.E.D.Va.1984) (Chapter 13 is a liberal discharge provision that is designed to encourage debtors to reorganize rather than liquidate). However, it would be contrary to the spirit and purpose of Chapter 13 to approve Caldwell's plan which was not an attempt to rehabilitate but an effort to evade a civil judgment that is nondischargeable in Chapter 7.
 
 
 47
 Therefore, for the foregoing reasons, we reverse and remand this case for further proceedings not inconsistent with this opinion.[19]
 
 
 
 *
 THE HONORABLE JULIAN ABELE COOK, JR., United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 11 U.S.C. Sec. 1301
 
 
 [2]
 The judgment creditors are James E. Hardin, James C. Hardin, and Ralph Majors
 
 
 [3]
 On appeal, the judgment creditors also challenge the Bankruptcy Court's conclusion that Caldwell committed all of his disposable income to the plan as required by Section 1325(b)(1)(B). Because we reverse on the issue of good faith, the issue of whether Caldwell satisfied the best effort requirement has not been addressed
 
 
 [4]
 We have previously outlined the circumstances that served as the basis for the state court civil action ("Santa Claus Caper") in In re Caldwell, 851 F.2d 852, 855 (6th Cir.1988)
 
 
 [5]
 The Appellants maintain that interest accrued on the $45,000 judgment at an annual rate of ten percent (10%) which totaled approximately $17,471.37 at the time of the filing of the Chapter 13 Petition. Thus, they conclude that the total amount due on the judgment is in the sum of $62,471.37
 
 
 [6]
 In order for a debtor to obtain judicial confirmation of a Chapter 13 reorganization plan, the plan must conform with the requirements of 11 U.S.C. Sec. 1325, which provides in pertinent part:
 (a) Except as provided in subsection (b), the court shall confirm a plan if--
 * * *
 (3) the plan has been proposed in good faith and not by any means forbidden by law;
 * * *
 (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
 * * *
 (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
 
 
 [7]
 Joint Appendix at 142
 
 
 [8]
 It should be noted that Caldwell did not list any creditors with a secured status in his Chapter 13 statement
 
 
 [9]
 In the Chapter 7 context, a civil judgment is nondischargeable under 11 U.S.C. Sec. 523(a)(6) if it is the result of a "willful and malicious injury by the debtor to another entity." The jury verdict against Caldwell for assault, false arrest, false imprisonment, and conspiracy to maliciously prosecute the judgment creditors constitutes a debt "for willful and malicious injury" to another and, therefore, would not be dischargeable under Chapter 7
 
 
 [10]
 Caldwell's father, as a result of his participation in the "Santa Clause Caper," see supra note 4, incurred a civil judgment against him for false arrest, malicious prosecution, and false imprisonment. Similar to the debtor in the case at bench, Caldwell's father sought to discharge this civil judgment under Chapter 13
 
 
 [11]
 The reasoning behind the "particular scrutiny" requirement in this context was explained by the United States Bankruptcy Appellate Panel of the Ninth Circuit as follows:
 The super discharge of Chapter 13 was provided by Congress as an incentive for the debtor to commit to a repayment plan under Chapter 13, as an alternative to providing creditors nothing under Chapter 7. Given a proper case, the court need not, and should not, neutralize that incentive by confirming Chapter 13 plans that are in essence veiled Chapter 7 cases.
 Logic requires that there be an articulated standard distinguishing entitlement to dischargeability under Chapter 13 vis-a-vis Chapter 7. To put it otherwise, there must be criteria which preclude by-pass of nondischargeability under Chapter 7 simply by detouring or converting to Chapter 13. Where there is an absence of any significant factual element distinguishing the circumstances of a Chapter 13 petition with a substantial nondischargeable debt from those attendant to a Chapter 7 petition, the debtor should not be permitted to nullify major provisions of 11 U.S.C. Sec. 523 merely by paying an insignificant portion of the nondischargeable debt. Congress in Chapter 7 does not allow "best effort" to discharge certain debts. Neither should best effort alone discharge them in Chapter 13. Good faith requires more.
 
 
 [12]
 Even if the judgment creditors were to receive the entire amount of the fund that had been reserved for the unsecured creditors under Caldwell's plan, these payments would represent less than nine percent (9%) of the amount of the judgment plus post-judgment interest
 
 
 [13]
 In support of its decision, the Bankruptcy Court also relied upon our opinion in Memphis Bank & Trust Co. v. Whitman, 692 F.2d 427 (6th Cir.1982). However, Memphis Bank is not instructive in the present case. In Memphis Bank, we determined that it was proper to review a debtor's preplan conduct when assessing the good faith requirement, and concluded that
 [w]e should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong.
 Memphis Bank, 692 F.2d at 432.
 We agree with the Bankruptcy Court that Caldwell's prejudgment conduct was neither fraudulent nor designed to obtain an economic advantage. Nevertheless, this fact is of little practical significance and is not informative on the issue of good faith since persons generally do not incur civil liability for assault and battery of another with the intent of defrauding the victim. The circumstances surrounding the incurrence of the judgment debt are rather neutral and certainly do not exemplify good faith in this case. Therefore, the manner in which Caldwell incurred the debt in question is not particularly relevant to the good faith analysis in Memphis Bank.
 
 
 [14]
 Joint Appendix at 132
 
 
 [15]
 Joint Appendix at 94
 
 
 [16]
 Joint Appendix at 93
 
 
 [17]
 During the 1984 and 1985 tax years, Caldwell earned approximately $24,000 each year. However, in 1986, he left his employment, exhausted the funds in his checking account, and changed his place of residence. In 1987, Caldwell accepted a position as a sales representative for a wholesale glass company with an annual salary of $16,000. We believe that Caldwell's employment record subsequent to the entry of the civil verdict against him does not support the lower court's finding that the plan had been submitted in good faith but, instead, represents an attempt to frustrate the efforts of the judgment creditors to collect on the judgment
 
 
 [18]
 We may concede, arguendo, that there are several factors which weigh in favor of a finding of good faith in this case. This Chapter 13 plan (1) is the debtor's first bankruptcy filing, (2) does not place an undue burden on the trustee, (3) does not compromise secured claims, (4) does not prefer one creditor over another, (5) contains inaccurate debt statements that were due solely to the debtor's inexperience with financial affairs, and (6) distributes the debtor's disposable income to the greatest extent possible. In this case, however, these factors are not overly instructive on the issue of good faith and, taking into consideration the totality of the circumstances, pale in comparison to the overwhelming indicia of bad faith listed above. Considering all the militating factors, it is apparent that the motive behind Caldwell's Chapter 13 plan is not to repay his creditors but is to escape the consequences of the civil judgment
 
 
 [19]
 On November 2, 1989, the United States District Court for the Eastern District of Tennessee granted the creditors' motion to dismiss Caldwell's Chapter 13 case. The Bankruptcy Court found that Caldwell materially defaulted under the terms of his reorganization plan and, as a result, dismissed his case pursuant to 11 U.S.C. Sec. 1307(c)(6)
 The dismissal of Caldwell's case by the Bankruptcy Court conflicts with the well established maxim that the "filing of a notice of appeal confers jurisdiction on the Court of Appeals and divests the District Court of control over those aspects of the case involved in the appeal." Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 379, reh'g denied, 471 U.S. 1062 (1985); see also NLRB v. Cincinnati Bronze, Inc., 829 F.2d 585 (6th Cir.1987); Garcia v. Burlington Northern R.R., 818 F.2d 713 (10th Cir.1987); Newball v. Offshore Logistics Intern., 803 F.2d 821 (5th Cir.1986); Matter of Combined Metals Reduction, Co., 557 F.2d 179 (9th Cir.1977); 9 Moore's Federal Practice, 203.11, at 3-44 to 3-48 (2d ed.1980). The Bankruptcy Court is not vested with the authority to dismiss Caldwell's reorganization plan, the legal validity of which is the subject of this appeal. To rule otherwise would allow a lower court to improperly divest an appellate court from rendering a decision on the merits of a pending appeal.
 Because the Bankruptcy Court did not possess the authority to render an adjudication on the dismissal motion during the pendency of this appeal, its dismissal order lacks finality and is, therefore, considered null and void. See Matter of Combined Metals Reduction, Co., 557 F.2d 179 (9th Cir.1977). But see In re Borg, 92 B.R. 475 (Bankr.D.Mont.1988).